## CALEB B. ROGERS & others *vs.* EPHRAIM C. TAINTOR.

F., J., R., and T., copartners, began business of manufacturing machinery at Worcester in 1852 under the name of F. & Co.; and F., J., R., and C., copartners, began like business at Cincinnati in 1853 under the same name, using it as the style of the firm and as a trademark. F. died in 1854. Ever since his death J., R., and C., copartners, continued the business at Cincinnati with all the rights as to the use of the name of F. & Co. which the Cincinnati firm had originally; and J., R., and T., copartners, continued the business

at Worcester under the name of F. & Co. with the assent of F.'s representatives, unti. 1861, when their firm was dissolved and its orders, correspondence and good will were sold to T., who thereafter pursued the business of buying and selling, but not of manufacturing, machinery. *Held*, that J., R., and C. could not maintain a bill in equity to enjoin T. from using the name of F. & Co. in his business and attaching it to machinery which he sells made by others than themselves.

BILL IN EQUITY filed by Caleb B. Rogers of Norwich, Connecticut, Edward Joslin of Keene, New Hampshire, and William H. Doane and William E. Loudon, both of Cincinnati, Ohio, all being copartners in the business of manufacturing woodworking machinery at Cincinnati, under the name of J. A. Fay & Co., alleging that they alone have the right to use that name in their business and as a trade-mark, and praying for an injunction to restrain the respondent from using it in his business at Worcester, or connecting it with woodworking machines sold by him unless they were made by the complainants. The case was reserved by *Chapman*, J., for determination by the full court, on facts which were agreed by the parties substantially as follows:

There were at various times prior to this bill four different firms engaged in the business of manufacturing woodworking machinery, under the name of J. A. Fay & Co., as follows: 1. About 1847 the business was first begun under that name by Fay and the complainant Joslin, at Keene, New Hampshire. 2. Soon afterwards it was begun at Norwich, Connecticut, under the same name, by Fay and the complainants Joslin and Rogers. 3. In 1852 it was begun at Worcester, Massachusetts, under the same name, by Fay, Joslin, Rogers, and the respondent Taintor; and afterwards one Horace Richardson also was admitted as a partner. 4. In 1853 it was begun at Cincinnati, Ohio, under the same name, by Fay, Joslin, Rogers, and one John Cheney; the complainants Doane and Loudon afterwards succeeding to Cheney's interest.

Fay died in 1854. The Keene firm was dissolved by his death. His interest in the Norwich firm was conveyed to others, and the name of that firm was changed to C. B. Rogers & Co. The business of the Worcester firm was continued under the name of J. A. Fay & Co., with the assent of Fay's representatives. The business of the Cincinnati firm also was continued under the same name.

And it was agreed that the Cincinnati firm has used that name ever since it began, both as a style of the firm and as a trade-mark; that it has all the rights in respect to its use which it had at the time of its original establishment; that it carries on a very extensive manufacturing business at Cincinnati, and sends its machines to various foreign countries; that the name is of great value as a trade-mark, on account of the superior quality of the machines formerly manufactured by all the four firms and now by the complainants; and that machines bearing that mark are sought and preferred above others.

In July 1861 the Worcester firm, being insolvent, was dissolved by mutual consent, and Rogers was appointed to settle its business. After the dissolution the partners agreed in writing that the property of the firm should be sold at public auction, one article of this agreement being in these words: " The orders that may be received and the good will of the firm to be sold and disposed of to such of the partners as will bid the most therefor, as soon as may conveniently be done." In pursuance of this agreement the orders, correspondence and good will of the firm were bid off by the respondent Taintor for the sum of eight hundred dollars, which he paid.

Since that time Taintor has been engaged in buying and selling, but not in manufacturing, woodworking machinery at Worcester, his business being to solicit and procure orders, which he fills by purchasing machinery from other manufacturers; and he has used the name of J. A. Fay & Co. in various ways, some of which are as follows: He has attached the name to machines which he has sold and sent into foreign countries. He has circulated price lists with the name printed at the head of the first page, and the same name printed below with the addition of the words " E. C. Taintor, succeeding partner; " with an announcement printed on another page that such lists will be sent on application to J. A. Fay & Co. or E. C. Taintor, Worcester; with an announcement on a following page that such lists will be sent on application to J. A. Fay & Co. or E. C. Taintor, succeeding partner; and with the words " J. A. Fay & Co. builders of all kinds of woodworking machinery," printed on the last page,

surrounded by cuts of machines, the name of E. C. Taintor not appearing on that page at all, and the name of J. A. Fay & Co., wherever occurring on any of the pages, being printed more conspicuously than the name of E. C. Taintor. And he has used letter-paper in his correspondence, having in one upper corner of the page a cut of a machine over a scroll containing the name of J. A. Fay & Co., and with the words "Builders of woodworking machinery, E. C. Taintor, successor to J. A Fay & Co.," in the other upper corner.

*G. F. Hoar*, (*F. P. Goulding* with him,) for the complainants. It is needful for the complainants to sustain three propositions : 1. That they have a right to the name in dispute ; 2. That the respondent has not a right to use it as he has done; 3. That the case is within the equity jurisdiction of the court.

1. The exclusive right was originally in the Keene firm. Both its members were members of the complainants' firm and assented to its use by that firm also. They could authorize the use as against themselves. The case finds that the complainants have all the rights the Cincinnati firm originally had. Therefore, as against Fay's representatives, they have full right. The Cincinnati, Worcester and Keene firms had concurrent rights, exclusive against all the world except each other. On the extinguishment of either, the right remained in the continuing firms. On the dissolution of the Worcester and Keene firms, it remained exclusively in the complainants' firm, unless the right of the Worcester firm passed to the respondent.

2. The respondent did not acquire that right by buying the good will. Story on Part. § 100. *Lewis* v. *Langdon*, 7 Sim. 421. *Cruttwell* v. *Lye*, 17 Ves. 335, 346. *Shackle* v. *Baker*, 14 Ves. 468. *Harrison* v. *Gardner*, 2 Madd. 198. *Anonymous*, 16 Am. Jur. 87. But, if he did, he acquired no right to use the name otherwise than as the Worcester firm used it. Manufacturing and selling was their business. His is only selling. He acquired no right to bestow the name, as he does, on all the manufacturers from whom he buys to sell again. His present use of the name is a fraud on the complainants and the public.

3. The equity jurisdiction of the court attaches. *Taylor* v

*Carpenter*, 3 Story, 458. *Coats* v. *Holbrook*, 2 Sandf. Ch. 586. *Knott* v. *Morgan*, 2 Keen, 213. *Farina* v. *Silverlock*, 6 De G., Mac. & G. 214. The case is not within the decision in *Ames* v. *King*, 2 Gray, 379, which was before the court acquired full equity power. An injunction will lie under Gen. Sts. *c.* 56, §§ 1, 2, 4. And the general jurisdiction of the court in cases of fraud applies also. The case is similar to those in which the proprietor of a public house has been protected in the exclusive use of its name. *Howard* v. *Henriques*, 3 Sandf. 725. *Marsh* v. *Billings*, 7 Cush. 322. The respondent should be restrained, at least, from any use of the name which conveys the false impression that the firm of J. A. Fay & Co., or any successor of that firm, is manufacturing woodworking machinery at Worcester.

*P. C. Bacon*, for the respondent, cited Story on Part. § 99, and cases cited in note 2; *Kennedy* v. *Lee*, 3 Meriv. 441; *Dougherty* v. *Van Nostrand*, Hoff. Ch. 68; *Bryson* v. *Whitehead*, 1 Sim. & Stu. 74; *Butler* v. *Burlason*, 16 Verm. 176; Collyer on Part. §§ 161, 162, and cases cited in note 3 to § 162.

HOAR, J. The court are of opinion that this bill cannot be maintained.

It is not brought under Gen. Sts. *c.* 56, §§ 3, 4, for using in the defendant's business the name of a person formerly connected with him in business, or of any other person, without the consent in writing of such person or his legal representatives; and, if it were, there is no fact upon which it could be supported. The name which the defendant has used is not the name of either of the complainants; and the representative of the person whose name is used is not a party to the bill.

Nor is it shown that the defendant has fraudulently, or otherwise, represented to the public that he is authorized to represent or act for the firm of the complainants. They are carrying on business at Cincinnati, under the name of J. A. Fay & Co. He is carrying on business at Worcester, under the same name; which is the name of a Worcester firm established in 1852, a year before the existence of the Cincinnati firm; of which Worcester firm the defendant was an original member, and continued to be a member until the death of Fay in 1854; and the

business was continued by him with two of the complainants until its dissolution in July 1861. All his acts and representations are only to the effect that he is still carrying on the business of the Worcester firm, of which he was a partner so long as it lasted, whose good will he purchased from the other surviving partners, and whose name he continues to use.

We do not find anything more substantial in the claim of the complainants that the defendant is guilty of a fraud, because, instead of manufacturing and selling machines under the name and with the trade-mark of J. A. Fay & Co. he puts that mark upon machines which he purchases of other manufacturers. If he has a right to use the name in his business, and to affix it as a trade-mark to his goods, so far as these complainants are concerned, they have no legal interest in the manner in which his business is conducted. No doubt they may be indirectly affected by it, as the reputation of a man may be affected by the behavior of another man of the same name. If the defendant made his own machines, and made them of a poorer quality than formerly, it might affect the reputation of all machines sold under that name in the market. If he made better machines than the complainants did, it might induce a preference for the machines which came from Worcester. But with either of these results the complainants would be entitled to no relief As a test of the matter, suppose the firm of J. A. Fay & Co. in Worcester had never been dissolved: could there be a pretence that they might not procure the machines which they sold to be made by others instead of making them themselves? or make or procure them of such quality as they thought fit? In the absence of any contract, the Cincinnati firm would have had no right to question the proceeding. If the defendant has a right to use the name, he would unquestionably have the right to carry on business under it in any lawful manner that he chose He would have no legal or moral right to pass off his machines upon the public as the manufacture of the complainants; but we do not think it is proved that he has attempted to do so. He has advertised and sold machines as those of J. A. Fay & Co. of Worcester; and if he has a right to use that name at all

the firm of the same name at Cincinnati have no concern with the quality of his wares, or the manner in which he supplies himself with them. That is a matter between him and his customers.

But the case for the complainants has been pressed most strongly upon the ground that the name of J. A. Fay & Co. is their trade-mark, which gives their manufacture a value and reputation in the market; that as each of the three firms in various parts of the country adopted it, in succession, they acquired an exclusive right to its use against all the world except those who had used it before; and that on the extinguishment of either firm, the right would remain to the continuing firm. We cannot accede to this proposition. We know of no case in which the doctrine on the subject of trade-marks has ever been carried to such an extent. A trade-mark is a peculiar name or device by which a person dealing in an article designates it as an article of a peculiar kind, character, or quality, or as manufactured by or for him. But how can a name be considered as peculiar, which is lawfully used by three different firms, in three states, acting independently of each other, and under no contract in relation to its use? If the right to use it in Massachusetts existed before and independently of the right to use it in Ohio, we know no principle of legal succession by which it is transferred, on the dissolution of the Massachusetts firm, to the firm in Cincinnati; nor what should make the claim of the latter preferable to that of either of the surviving partners in this Commonwealth. It might well be that three different manufacturers might use the same trade-mark as their joint property, by compact among themselves; but that is not this case; and the law implies no such community of property in the absence of express agreement. Besides, if such a right of succession as has been suggested could be maintained, it would seem to have been of equal effect upon the dissolution of the several firms of J. A. Fay & Co by the death of Fay in 1854. Yet the Worcester firm continued the use of the name for several years afterwards without objection.

We were inclined to the opinion that the sale of the good will

of the business of the Worcester firm of J. A. Fay & Co. to the defendant, upon its dissolution in 1861, in which two of the complainants who had been his partners joined, would have the effect, as against them, to give him the right to continue to use the name, upon the facts which appear in the case. But finding the considerations decisive which have been already stated, we do not think it necessary to enter upon that discussion.

*Bill dismissed with costs*