Williams, J.
 

 The action below was brought by Andrew G. Snyder and William A. Snyder, against the Snyder Manufacturing Company, to enjoin the use by the defendant, of the name Snyder Manufacturing Company, and especially the use of the word Snyder in that name. Certain averments of the petition are denied by the answer, and some allegations of the answer are controverted by reply; but the issues thus raised seem unimportant in the light of the facts admitted by the pleadings, which are, in substance, as follows: The plaintiffs,
 
 *89
 
 who are now, and for several years past have been engaged in business as manufacturers of certain kinds of goods at the city of Piqua, in this state, for many years before carried on the same kind of a business at Ashtabula, also in this state, and by their skill and attention to business established a valuable reputation in their business, which was carried on under the name of Snyder
 
 &
 
 Son. Then, on the 7th day of September, 1887, they, and two other persons formed a copartnership with W. H. Bradley who was the owner of a manufactory at Ashtabula, employed in the manufacture of goods similar to those made by the plaintiffs, for the purpose of combining the business of the parties and thereafter continuing the same as one concern. By the terms of the partnership agreement, Bradley was to, and did contribute one-half - of the capital, and in addition thereto, furnish the use of his manufactory without charge and expend at least three thousand dollars in putting the same in repair; as an offset to which the plaintiffs were to, and did put in the good will óf their business, and they and their two associates were to, and did contribute the other half of the capital and devote their time and skill to the manufacture of goods and the general manag-ement of the business of the partnership, Bradley not being required to give any time or attention thereto. This copartnership, which carried on its business under the firm name of “Snyder Manufacturing Company,” continued for a period of three years, acquiring under that name an extensive and profitable business and a good reputation; and at its termination, the parties being unable to effect a satisfactory settlement, the plaintiffs, to obtain a settlement of its affairs, commenced an action, in which a receiver was appointed
 
 *90
 
 at their instance, who took possession of the partnership effects, and afterwards, under an order of the court so directing him, sold the same, with the good will of the firm, at public sale. The order of sale contained an express provision that the purchaser should have the right to carry on the business as the successor of the firm, and was so made without objection from any of the partners, all of whom were parties to the action. The plaintiffs and Bradley were competing bidders at the sale, when the latter, bidding more than his competitors for the assets and good will of the firm, and being the highest bidder therefor, became the purchaser. The sale was duly confirmed by the court and the property transferred to Bradley, who shortly thereafter, with other persons, organized a corporation under the laws of this state, with the name of “The Snyder Manufacturing Company,” for the purpose of continuing the busines at the manufactory which had been operated by the firm, and the partnership effects and good will that Bradley had purchased were transferred with the manufacturing plant to the corporation, which has since, in its corporate name, been doing a business of like character to that formerly done by the copartnership, and claiming to be its successor. That manner of conducting its business by the corporation was enjoined by the judgment which it is sought here to have reversed; and whether there should be a reversal or not, it is conceded depends on the effect of Bradley’s purchase of the assets including the good will of the partnership, and their transfer by him to the defendant corporation. Did the defendant in that way acquire the right, to carry on a business in the name adopted by it, like that which had been done by the previously exist
 
 *91
 
 irig- partnership, and as its successor? Without attempting- an accurate or exhaustive definition of the g-ood will of a business, it may be said that it practically consists of that favorable reputation it has established creating a disposition or inclination of persons to extend their patronage to the business on that account; and, as the business is always associated with the name under which it is conducted, the name becomes a part, and often an important part of its good will. The good will of a copartnership is regarded in law as property, constituting a part of its assets, and having a saleable value in connection with its tangible property, sometimes exceeding all its other assets, because of the advantag-es afforded a purchaser of retaining an established custom, and enlarging it. As a general rule, - when it becomes necessary to sell the partnership effects the good will should be valued and sold with, and as a part of them, and ordinarily it passes by a sale of them though not expressly mentioned.
 

 It is well settled, that when a partner sells his interest in the business to a copartner, without a reservation or exception of the good will, the purchaser is not only entitled to continue the business in the name of the firm and as its successor, but he may prevent the selling partner or other person from carrying on business in that way; and no good reason is apparent why the same result should not attend a purchase of the entire assets and good will of the firm by one of the partners at a sale thereof made under an order of court in a proceeding to which the'partners were parties; especially if the sale be so made at their instance and for their benefit. Indeed, the authorities appear to go further and maintain that upon the dis
 
 *92
 
 solution of a copartnership, there being no agreement between its members to the contrary, the court having the parties before it may order the good will to be sold or disposed of as may be deemed most advantageous to the partners; and, that the purchaser at such sale, though a stranger to the firm, may lawfully continue the use of the firm name in carrying on the business thereafter. And that seems but the logical result of the rule that the rights mentioned belong to a partner who becomes a purchaser at such sale; for, in order to insure a. fair sale, all bidders should stand upon an equality, which would not be so if the rights acquired at the sale were to be varied or made to depend upon the relation which the purchaser had sustained to the partnership, or other individual circumstance. The saleable value of the good will is whatever it is worth in the market when open to untrammeled competition; and when brought to that test for the benefit of the partners, it is not for them to assert that the purchaser obtained less than they authorized to be sold, or induced him to believe he was buying.
 

 It is contended that Bradley did not become the owner of the good will of the late firm of which he was a member, by his purchase at the receiver’s sale, because, (1) the good will of the plaintiffs was put into the firm as an offset to the use of Bradley’s manufactory and only for the period ag’reed upon for the duration of the partnership, and therefore, at the expiration of that period the plaintiffs were re-invested with their- good will, as was Bradley with the possession of his property; (2) the order of the court under which the sale was made expressly excludes any right on the part of the purchaser to make use of the firm
 
 *93
 
 name; and, (3) the good will ceased upon the termination of the partnership, and consequently could not be sold.
 

 1. With respect to the first of these propositions, it may be observed that what the order of the court directed to be sold, and what the receiver under its authority in fact sold, was not the good will or property of the plaintiff’s, but those belonging to the firm. The plaintiff’s business and its good will as they existed at the formation of the partnership, were absorbed and merged in those of the firm, and went to make up its assets, and, in so far as, they did so, became the property of the firm, subject to sale under the order with its other effects, and with them- vested in the purchaser. Conceding, however, that the plaintiffs, at the expiration of the partnership into which they had entered with Bradley, were restored to the good will which belonged to their business when the partnership was formed, and were entitled to resume that business under the name they had formerly used, it is not perceived how that could operate to vest in them any part of the good will of the firm, or prevent its vesting in Bradley under the receiver’s sale.
 

 2. The order under which the sale was made directs the receiver to sell all of the property of the firm “as a whole including the good will,” and provides that “the purchaser shall have the right to carry on the business as successor to the Snyder Manufacturing Company, ” but states, that “the court does not pass upon or make any order whatever as to what name said purchaser would have the right to use in carrying on said business. ” The last clause of the order is relied upon as excluding any right on the part of the purchaser
 
 *94
 
 under it to employ the name of the firm in any business he might choose to carry on after the purchase, and as further excluding any authority to do such business as the successor of the firm. But it is obvious the clause has not that operation. Instead of being an adjudication abridging the rights of the purchaser, with regard to the use of the firm name, its design was to leave the determination of those rights, in any controversy that might thereafter arise concerning them, unaffected by the order. And, as a partner who purchases the property and good will of the copartnership becomes entitled to the use of the firm name in the absence of a stipulation forbidding it, an express provision in the sale, or the order of the court under which it was made, that the purchaser should have that right was unnecessary.
 

 3. The proposition mainly urged in support of the judgment below is, that the good will of a copartnership can exist only so long as it is a g’oing’ concern, and, ceasing upon the termination of the partnership, is not thereafter a subject of sale. It may be that when a firm is dissolved, its effects distributed, or sold in parcels to purchasers not wishing to embark in a similar business, and its affairs are wound up, its good will is dissipated and lost; but that results from the acts of the partners themselves in making such a disposition of the assets as renders the good will unavailable as a saleable article,, for it is not a distinctive article of property which may be sold separate from the tangible effects of the partnership. In that sense the good will may be said to cease when the partnership is so wound up; and that in substance, is the scope and purport of the rule declared in the cases cited in the brief of the defendant in error.
 
 *95
 
 In neither of the eases was the question here presented, involved. And, where the copartnership is wound up in the manner indicated, the good will remains the undivided property of the members of the firm, either or any of whom may thereafter lawfully use the firm name if they desire to continue in business, although the name of the partner so using it does not appear in that of the firm.
 
 Banks
 
 v. Gibson, 34 Beav., 566;
 
 Bradbury
 
 v.
 
 Dick
 
 ens, 27 Ibid., 53;
 
 Caswell
 
 v. Hazard, 121 N. Y., 484
 
 Dougherty
 
 v.
 
 Van Nostrand,
 
 Hoff., Ch. 68.
 

 The proposition contended for, if sustained, would practically destroy the value of the good will as an asset of the partnership, and entail upon its members, in many instances, serious loss. As partnerships rest upon the agreement of the parties, expressed or implied, a dissolution occurs and a new partnership is foirned whenever a partner retires, or a new one is admitted; and if, when that occurs, the good will of the dissolved firm should cease, and could neither be acquired by the new firm, nor transferred by any sale made by the members of the old one though expressly included ixx the sale of its effects, its value as an asset of the firm would disappear; yet, it is commonly known that the good will coixstitutes an important, and sometimes a coxxtrolling part of the considex-ation for the purchase, and it has long been the settled law that, ixx _cases of the kind mentioned the purchaser obtains the good will, including the right to the use of the firm name in the contixxued prosecution of the business. In so holdixxg the courts give effect to the intention of the pax-ties as disclosed by the transaction. Where the part
 
 *96
 
 ners themselves make a sale of the firm effects, including the good will, the intention and understanding is manifest that the purchaser shall acquire and enjoy every advantage and benefit which the firm had, so far as the parties are capable of transferring the same; and when a sale is made under an order of court in a proceeding to which the partners are parties that intention may be not less plainly inferable. The object to be accomplished in making the sale, in either mode, of the good will with the other partnership effects, is to enhance the value of the assets by inducing persons to bid more for them than they otherwise would, under the belief that the purchaser will obtain all the benefits of the good will; and when the sale is made and consummated on that basis, it would be neither just nor equitable to permit the vendors to deprive the purchaser of anything they undertook to sell, and for which they have been paid. The good will being thus sold as a thing of value, and paid for by the purchaser as such, to deny him the benefit of it would operate as a fraud which the law will not sanction.
 

 We are not reluctant, therefore, in holding that upon the dissolution of a trading copartnership, its assets, including the good will of the business, may be sold as a whole, either by the partners directly, or through a receiver under an order made by a court in a case to wjhich they are parties; and that a purchaser thereof under either method of sale is entitled to continue the business as the •successor of the firm, and make use of the firm name for that purpose. And, further, that where the purchaser transfers the property so acquired by him to a corporation of which he is a member, organized to succeed to the business, it may
 
 *97
 
 carry on the business, in the same manner, under a corporate name including the name which had been used by the firm.
 
 Brass and Iron Works
 
 v. Payne, 50 Ohio State, 115.
 

 If it is desired to limit the right of the purchaser or his vendee in the use of the firm name, or exclude such right altogether, it should be done by stipulation in the contract when the sale is made by the partners, or by a.provision to that effect in the order, when the sale is made through the court.
 

 In the case of
 
 Horton Manufacturing Co.
 
 v.
 
 Horton Manufacturing
 
 Co., 18 Fed. Rep., 816, cited by counsel for the defendant in error, a copartnership without any consideration obtained the consent of a person not a member to usé his name in, and as part of the firm name. That consent, the court held, amounted to a mere license, revocable at pleasure, and the partnership so obtaining it could not, without the consent of such person, “transfer the right to another company or corporation to make a like use of the name.” But that case cannot be regarded as an authority against the claim made by the plaintiff in error in this case; for, where the partners themselves make a sale of their firm’s good will, which carries with it the right to use the firm name, or authorize such sale to be made it cannot be said that the use of the name, either by the purchaser, or those succeeding to the business, is without their consent. As said by the court in the ease just cited, on page 819: “If one has made of his own name a trade mark, and then transfers to another his business, in which his name has been so used, the-right to continue such use of the name will doubtless follow the business as often as it may be transferred. ”
 

 
 *98
 
 Upon the facts admitted by the pleadings the judgment of the circuit court must be reversed, and judgment rendered for the plaintiff in error.
 

 Judgment accordingly.