Bank of Tomah vs. Warren and another.

BANK OF TOMAH, Respondent, vs. WARREN and another, Appellants.

*September 24 — October 13, 1896.*

*Good will: Trade-name: Voluntary assignment: Abandonment, what amounts to: Banks and banking: Injunction.*

1. The custom and patronage arising from the establishment and long continuance of a banking business, and the expectation and probability of its continuance at the same place, constitute the good will of the business and confer benefits and advantages upon the proprietors which are a species of assets.

2. The good will and business name of a private bank pass to the assignee for the benefit of creditors of the proprietor under an assignment covering all his property and effects of every kind and description, and may be transferred by the assignee to third persons in connection with the real estate and other property formerly used by the assignor in carrying on such business.

3. A mere intermission in the business of a bank from July 27, 1893, when it suspended, to March 6, following, when the purchaser of the good will and trade-name, etc., resumed the business, did not operate as an abandonment of such good will or trade-name, evidence of a distinct intention to abandon being necessary in order that such a suspension may so operate.

4. The wrongful use of a trade-mark or trade-name may be enjoined without proof that any one has been actually deceived.

APPEAL from a judgment of the circuit court for Monroe county: O. B. WYMAN, Circuit Judge. *Affirmed.*

It appears from the record, and is found by the trial court, or conceded, in effect, that for many years prior to June 1, 1885, one Mason A. Thayer, either alone or in company with another, carried on the banking business as a private banker in the city of Tomah, under the name and style of the "Bank of Tomah;" that at the date mentioned, and to comply with the requirements of ch. 152, Laws of 1885, the said Thayer prefixed to such name the name of the person or firm so engaged in such business; and thereupon the bank was designated by the name and style of "M. A. Thayer & Company's Bank of Tomah;" that such business was continued by said Thayer under the name and style last mentioned until July 27, 1893; that ch. 152, Laws of 1885, was repealed by ch. 523, Laws of 1889; that during all those years that bank was generally known as the "Bank of Tomah;" that it was the only banking institution in Tomah until January 1, 1889, when the defendants organized therein a private banking house, under the name and style of "J. H. Warren & Son, Bankers;" that July 27, 1893, Thayer, being then insolvent, closed his bank, suspended payment, and ceased to do a banking business, and from that time to August 4, 1893, endeavored to settle with his creditors, and resume business, but failed; that August 4, 1893, Thayer made a voluntary assignment of all his property not exempt, to wit, "all and singular the lands, tenements, hereditaments, appurtenances, goods, chattels,

stock, accounts, promissory notes, bonds, bills, debts, choses in action, claims, demands, property, and effects of every kind and description belonging to said Thayer, or in which he has any right or interest," to one W. G. Williams; that Williams thereupon qualified as such assignee, and entered into the possession of the bank, bank building, bank fixtures, good will and name of the Bank of Tomah under and by virtue of such assignment; that under and by virtue of said assignment Williams, as such assignee, continued to receive the mail addressed "Bank of Tomah," and to conduct the correspondence appertaining to said Bank of Tomah until February 4, 1894; that the organization of a banking association was contemplated by the promoters of the plaintiff bank, and negotiations entered into by them, for the purchase of the bank building, good will, and name of the Bank of Tomah, in December, 1893; that January 15, 1894, Frank and S. Drew, copartners as Drew Bros., commenced to do a banking business at Tomah under the name and style of "Drew Brothers, Bankers," and continued to do such business until March 6, 1894; that February 20, 1894, Frank Drew and several other persons signed articles for the incorporation of the plaintiff bank under the laws of this state, with power to commence business March 1, 1894; that the authorized capital of the corporation was $25,000, of which $21,700 was subscribed by Frank Drew; that the plaintiff was so duly organized and incorporated by the name and style of "*Bank of Tomah*," at Tomah, Wisconsin; that February 19, 1894, the said Williams, as such assignee, entered into an agreement with D. A. and C. A. Goodyear, promoters of the plaintiff corporation, for the sale and conveyance to them of the bank building used and occupied by said Thayer in the conduct and management of his banking business in Tomah; that February 20, 1894, and for the same consideration, Williams, as such assignee, transferred and assigned to D. A. and C. A. Goodyear, for the benefit of the

plaintiff 'corporation, the building, fixtures, good will, and name of the "Bank of Tomah" as theretofore conducted by said Thayer in Tomah, thereby intending to sell and convey all the rights and privileges appertaining to said banking business enjoyed by Thayer while conducting said banking business in Tomah; that the plaintiff at once entered into possession of the name, business, bank building, and bank fixtures under and by virtue of said assignment, and has ever since done a banking business under its corporate name of "*Bank of Tomah;*" that the plaintiff commenced doing business as such bank March 6, 1894, using the same books of account and stationery theretofore used by Drew Bros., Bankers, and by the impression of a rubber stamp upon said books and stationery indicated itself as the "*Bank of Tomah*, Incorporated Successor to Drew Brothers, Bankers;" that immediately after the incorporation and organization of the plaintiff its officers made diligent and strenuous efforts to extend its business with the various commercial and business houses of the country, advertising in banking journals and newspapers, and sending out circulars and inviting business under the name of "*Bank of Tomah*," particularly with the various banks of the Northwest; that from January 1, 1889, to August 12, 1893, the defendants conducted a private banking business under the name and style of "J. H. Warren & Son, Bankers," at Tomah; that eight days after the assignment made by Thayer to Williams, to wit, August 12, 1893, the defendants changed their name upon their sign so as to read "J. H. Warren & Son's Bank of Tomah," and so advertised and made their official reports; that between July 27, 1893, and August 4, 1893, the mail coming to Tomah, addressed "Bank of Tomah," was delivered to Thayer, and by him to the defendants; that on and after August 12, 1893, the defendants demanded and claimed to receive from the post-office authorities all mail addressed "Bank of Tomah" received at the post office in

Tomah; that by the action of the postal authorities all mail received at Tomah addressed "Bank of Tomah" was delivered to Williams, as such assignee, until February 4, 1894; that on and after February 4, 1894, all mail received at the post office in Tomah addressed "Bank of Tomah" was delivered to the defendants by the postal authorities, and continued to be so delivered until enjoined in this action; that from and after March 6, 1894, a considerable part of the mail received through the post office at Tomah addressed "Bank of Tomah" was intended for the plaintiff, and related to its business; that the plaintiff immediately notified the postal authorities, and demanded and claimed to receive all mail addressed to it, and relating to its business as "Bank of Tomah;" that the defendants at the same time demanded from the postal authorities, and claimed to receive and since have received from the post office at Tomah, all mail addressed to the "Bank of Tomah," to the embarrassment and injury of the plaintiff; that the whole of the mail and correspondence intended for the plaintiff and addressed to the "Bank of Tomah" has been demanded and received by the defendants; that the defendants threatened to continue to use the trade-name and title of "Bank of Tomah," and to continue to receive and convert to their own use all letters and the contents thereof coming through the mail addressed to the plaintiff by its corporate name, and that has been done ever since March 19, 1894, by direction of the post-office department; that Drew and other promoters of the plaintiff knew at the time of the formation of the plaintiff corporation that the mail was then being delivered by the postal authorities to the defendants; that prior to the commencement of this action the plaintiff sustained great damage and irreparable injury by such wrongful conversion and use of its corporate name; that April 20, 1894, the plaintiff commenced this action to enjoin the defendants from receiving, opening, reading, and retaining mail addressed to and intended for the plaintiff, and for damages.

Bank of Tomah vs. Warren and another.

The defendants answered by way of admissions, denials, and counter allegations, and a counterclaim to which the plaintiff replied.   Upon the trial the court found the facts, in effect, as stated, and as conclusions of law the court found, in effect, that the name "Bank of Tomah" was, at the time of the assignment by Thayer to Williams, a trade-name for the banking business of Thayer in Tomah; that the assignment for the benefit of creditors of Thayer conveyed to Williams the bank building and the good will and trade-name of the "Bank of Tomah;" that by the sale and transfer of the bank building and good will and name of the "Bank of Tomah" by said assignee to the plaintiff corporation the plaintiff became vested with all the rights of said Thayer in and to the name of "Bank of Tomah" as a trade-name; that by its charter the plaintiff was entitled to use the name "Bank of Tomah" in its business, and to receive all mail addressed to it by its corporate name from the post office at Tomah, without interference by the defendants; that all mail addressed "Bank of Tomah" should be delivered to the plaintiff, unless the same bore external evidence that it was intended for the defendants; that any mail so delivered to the plaintiff and intended for the defendants should be forthwith delivered to the defendants by the plaintiff without interference or unnecessary delay; that the defendants be enjoined from demanding or receiving any mail addressed "Bank of Tomah," unless the same should bear external evidence other than such address that it was intended for the defendants; that the plaintiff should recover judgment for one dollar damages, besides costs. Judgment was entered accordingly, and the defendants appealed.

For the appellants there was a brief signed by *Higbee & Bunge,* and oral argument by *E. C. Higbee.* They contended, *inter alia,* that when a trade-name is assigned without a going business, the purchaser himself deceives the public, and equity will not protect him.   *Metropolitan Nat. Bank*

*v. St. Louis Dispatch Co.* 36 Fed. Rep. 722; *Millbrae Co. v. Taylor*, 25 L. R. A. 193; Browne, Trade-Marks, §§ 542, 543; *Samuel v. Buger*, 13 How. Pr. 342; *S. C.* 24 Barb. 163; *Motley v. Downman*, 3 Mylne & C. 1; *Corwin v. Daly*, 7 Bosw. 234; *Morgan v. Rogers*, 19 Fed. Rep. 596; *Hammond & Co. v. Malcolm Brunker & Co.* 9 Rep. Pat. Cas. 301; *Pinto v. Badman*, 8 id. 181; *Skinner v. Oakes*, 10 Mo. App. 45; *Filkins v. Blackman*, 13 Blatchf. 40; *Chadwick v. Covell*, 151 Mass. 190; Upton, Trade-Marks, 26, 27; *McVeagh v. Valencia Cigar Factory*, 32 Off. Gaz. 1124.   What the plaintiff got by the conveyance through the assignee and the Goodyears was the place, and all authorities are clear and uniform upon the proposition that a trade-name is incident to the business and not the place.   *Woodward v. Lazar (What Cheer House Case)*, 21 Cal. 448; *Cigar Makers Protective Union v. Conhaim*, 3 L. R. A. 125; *Carsons v. Ury*, 5 id. 614.   A trade-name or trade-mark can only be assigned with a mercantile or manufacturing business, or where it can be truthfully said that the identity of the business does not change, although there be a change in the proprietorship or in the *personnel* of the management.   In such case there is no fraud on the public, as the business remains the same, but when the service or the business depends upon personal credit or skill or ability, then the trade-name or trade-mark cannot be assigned, for that would be a falsehood and a fraud on the public.   Browne, Trade-Marks, § 522.   The trade-name of a private bank is not so assignable.   *Mattingly v. Stone*, 12 S. W. Rep. 467; *Jerome v. Bigelow*, 66 Ill. 452; *In re Swezey*, 62 How. Pr. 215; *Leather Cloth Co. v. Am. Leather Co.* 11 Jurist (N. S.), 513; *Hall v. Barrows*, 33 Law J. (Ch.), 204, 10 Jurist (N. S.), 55; *Hegeman & Co. v. Hegeman*, 8 Daly, 1; *Hoxie v. Chaney*, 143 Mass. 592; 26 Am. & Eng. Ency. of Law, 381, and cases cited.   The suspension of business by Thayer for a period of eight days before the assignment and his delivery of mail

matter coming addressed "Bank of Tomah" relating to new business to the defendants, clearly indicates an abandonment of his business and of any claim to the use of the name "Bank of Tomah." This intent to abandon was clearly shown by his subsequent assignment of his property without mention of his business or trade-name or good will. *Wood v. Lambert*, 55 Law J. (Ch.), 377; *Browne v. Freeman*, 12 Weekly Rep. 305; *Bradley v. Norton*, 33 Conn. 157; *Chandee v. Deere*, 54 Ill. 439.

For the respondent there was a brief signed by *George Graham* and *Losey & Woodward*, attorneys, and *J. M. Morrow*, of counsel, and oral argument by *Mr. Graham* and *Mr. G. M. Woodward*. They contended, *inter alia*, that such a name as "Bank of Tomah" may be appropriated even for a technical trade-mark. Cox, Man. of Trade-Mark Cas. Nos. 140, 318, 325, 329, 542, 599, 696, 722; *Newman v. Alvord*, 51 N. Y. 189; *Van Horn v. Coogan*, 52 N. J. Eq. 380; *Gebbie v. Stitt*, 82 Hun, 93; *Chas. S. Higgins Co. v. Higgins Soap Co.* 144 N. Y. 462. In general the rules applicable to trade-marks apply to trade-names. *Glen & Hall Mfg. Co. v. Hall*, 61 N. Y. 231. The language of the assignment is broad enough to convey, and the law will impute to it an intention to convey, to the assignee every item of property of every name and nature, and all rights, interests, and claims in and to all property and appurtenances then owned by Thayer, apart from his exemptions. The trade-name was property and it went to the assignee by the express terms of the deed. It is assets in the hands of an administrator. *In re Randall's Estate*, 8 N. Y. Supp. 652. It passes to an assignee in bankruptcy. *Hudson v. Osborne*, Cox, Man. of Trade-Mark Cas. No. 323. It is not destroyed by death or by long interruption of business. *Glen & Hall Mfg. Co. v. Hall*, 61 N. Y. 226. It passes to a receiver. *Fish Bros. Wagon Co. v. La Belle Wagon Works*, 82 Wis. 546. It passes by mere transfer of the building in which

the business was carried on. *Listman Mill Co. v. William Listman Milling Co.* 88 Wis. 334; *Williams v. Farrand*, 88 Mich. 473. See, also, *Brass & I. Works v. Payne*, 50 Ohio St. 115; *Myers v. Kalamazoo Buggy Co.* 54 Mich. 215; *Milliken v. Dart*, 26 Hun, 24.

CASSODAY, C. J. Prior to the failure, the banking business had been conducted at Tomah under the name and style of the "Bank of Tomah" for more than fifteen years. During that time Thayer, the owner, or principal owner, of the bank, did not live at Tomah, but at Sparta. Nevertheless that bank had, during that time, done a large and profitable banking business, and had a large patronage, and numerous customers, residing not only in and about Tomah, but also at more or less distance, conducting their business by correspondence. Such custom or patronage. arising from the establishment and long continuance of the business, and the expectation or probability of its continuance at the same place, constituted, in legal language, the good will of the business. There can be no question but that such good will included benefits and advantages to the proprietor, in addition to the specific value of the property considered by itself, and hence constituted a species of asset or property. In other words, the bank, with its equipments, at the time of the failure, was of far more value for the purpose of continuing the banking business, by reason of such good will, than it would have been had the bank just then been started. These views are abundantly supported by authority. *Kennedy v. Lee*, 3 Mer. 452; *Churton v. Douglas*, Johns. Eng. Ch. 174; *Hall v. Barrows*, 4 De Gex, J. & S. 150; *Ginesi v. Cooper & Co.* 14 Ch. Div. 596; *Leggott v. Barrett*, 15 Ch. Div. 306; *Angier v. Webber*, 14 Allen, 211; *Glen & Hall Mfg. Co. v. Hall*, 61 N. Y. 226; *Chittenden v. Witbeck*, 50 Mich. 401; *Menendez v. Holt*, 128 U. S. 514; *Bradbury v. Dickens*, 27 Beav. 53. Such good will was so secured

under and in the name of the "Bank of Tomah." The question recurs whether such good will and trade or business name passed from Thayer to Williams by the clause in the assignment quoted in the statement, and passed from Williams, as such assignee, to the plaintiff, by conveying, selling, and transferring to it "the building, fixtures, good will, and the name of the Bank of Tomah," as theretofore conducted by Thayer in Tomah, thereby "intending to sell and convey all the rights and privileges appertaining to said banking business enjoyed by" Thayer "while conducting said banking business in the city of Tomah." This court has repeatedly sanctioned the right of such transfer in connection with the establishment of a trading or manufacturing business. *Washburn v. Dosch*, 68 Wis. 436; *Fish Bros. Wagon Co. v. La Belle Wagon Works*, 82 Wis. 561, 562, and cases cited. That case was cited approvingly in *Richmond Nervine Co. v. Richmond*, 159 U. S. 293, 302. In *Churton v. Douglas, supra*, it was held that upon a sale of the good will of a business the vendor is at liberty to set up a similar business, "but he is not at liberty to do so under the old style or firm, although his name should be the only one appearing in that firm; nor is he at liberty in any other manner to hold out that he is carrying on business in continuation of or in succession to the business carried on by the late firm." In *Ginesi v. Cooper & Co., supra*, it was held that "a trader who has sold his business and good will to another for value must abstain not only from soliciting orders from, but also from dealing with, the old customers." To the same effect is *Trego v. Hunt* [1896], App. Cas. 7, in the House of Lords. In *Menendez v. Holt, supra*, it was held that the retiring member of the firm had relinquished all right to the good will of the business of the other members of the firm, who continued to do business at the old place; and that the trade mark or name was a part of the good will of the business. In *Smith v. Everett*, 27 Beav. 446, it was held

that the good will of a partnership banking business conducted under the name of the "New Sarum Bank" did not, on the death of one partner, survive beneficially to the others; that, when it has any value, a due proportion thereof belongs to the estate of the deceased partner, but that the surviving partner still had the right to carry on the same business at the same place, but upon his sale of the business the estate of the deceased was entitled to a share of so much of the purchase price as was attributable to the good will. In *Mellersh v. Keen*, 27 Beav. 236, *S. C.* 28 Beav. 453, a firm had for some time been conducting a banking business under the name of "Mellersh & Keen's Bank." Keen became a lunatic, and the plaintiff filed a bill for the dissolution of the firm, etc.; and it was held that the plaintiff, having obtained the exclusive possession and benefit of the good will, was accountable therefor; that in ascertaining its value the court considered what it would have produced if sold in the most advantageous manner, and at the proper period of time; and assessed the value of the good will of the banking business at one year's average net profits. In *Thynne v. Shove*, 45 Ch. Div. 577, the plaintiff sold his business of a banker, conducted under the name of "A. Thynne, Banker," and the good will thereof, and his stock in trade, including trade cards bearing the name of "A. Thynne, Banker," to the defendant. The deed of the premises contained an assignment of "all the beneficial interest and good will of the said Arthur Thynne in the said trade or business," but contained no express assignment of the right to use the plaintiff's name. The defendant used up the cards on hand, and printed others just like them. The plaintiff brought suit to restrain the defendant from printing or publishing such cards, or otherwise trading in his name; and the court held that by virtue of the assignment to him of the good will of the business the defendant was entitled to use the name of the plaintiff for the purpose of

showing that the business was formerly carried on by the plaintiff, provided he did so in a way not to expose the plaintiff to liability.   See, also, *Stone v. Carlan*, Cox, Trade-Mark Cas. 115; *Marsh v. Billings*, Cox, Trade-Mark Cas. 118; *S. C.* 7 Cush. 322; *S. C.* 54 Am. Dec. 723; *Woodward v. Lazar*, 21 Cal. 448, in which the use of names of hotels was protected.   From the authorities cited it is very manifest that the good will and business name of "Bank of Tomah" was assignable, and passed as assets and property to the plaintiff by the assignments and transfers mentioned.

The mere intermission in the business of the bank, from the time of the failure, July 27, 1893, to March 6, 1894, when the plaintiff, under such assignments and transfers, resumed the same, did not operate as an abandonment of such good will or trade-name. In *Monson & Co. v. Boehm*, 26 Ch. Div. 398, it was held that the mere discontinuance of the business for lack of demand, though coupled with non-registration and non-assertion of any right for the period of five years, did not operate as an abandonment of a trade-mark; that, to so operate, there must be evidence of a distinct intention to abandon.   In the case at bar it appears that only eight days after Thayer made his assignment for the benefit of creditors the defendants, who had, for more than four years and a half, been doing business under the name and style of "J. H. Warren & Son, Bankers," changed the name and style of the bank to "J. H. Warren & Son's *Bank of Tomah*."   This was manifestly done to secure the former custom and patronage of M. A. Thayer's Bank of Tomah, as far as practicable.   The unseemly controversy over the mail matter which came to the post office at Tomah addressed to "Bank of Tomah" shows that the defendants were successful in accomplishing their purpose, at least to some extent.

It is well settled that the wrongful use of a trade-mark or trade-name may be enjoined without proof that anyone had

Eastwood vs. La Crosse City R. Co.

actually been deceived. *Jay v. Ladler*, 40 Ch.˙Div. 649.
Other cases might be cited, but it is unnecessary.

*By the Court.*— The judgment of the circuit court is af-
firmed.