MORGAN *et al. v.* FRANK E. BLOCK CO. *et al.*

No. 6583.   DECEMBER 12, 1928.

*Brandon & Hynds* and *Alston, Alston, Foster & Moise,* for plaintiffs in error.

*Colquitt & Conyers,* contra.

BECK, P. J.   Frank E. Block Company, a corporation engaged in the manufacture of crackers and candy, sold to National Biscuit Company its real estate, buildings, machinery, equipment, trucks, trade-fixtures, good-will, trade-marks, copyrights, and patents owned by it and (or) acquired or utilized in the conduct of the business carried on by the Frank E. Block Company.   The National Biscuit Company then authorized Brooks Morgan to procure a charter for Block Candy Company, and agreed to transfer to the corporation so organized certain of the candy machinery, together with the good-will, trade-marks, copyrights, and patents which it had purchased from the Frank E. Block Company, and to take in payment preferred stock in the new company so organized of the par value of twenty-five thousand dollars.   This was afterwards confirmed by a formal conveyance, in which the agreement was set out that Brooks Morgan would, as soon as possible, incorporate a company to be known as "Block Candy Company" and transfer the said assets to it and issue to the National

Biscuit Company twenty-five thousand dollars of preferred stock in payment. Application for the charter was made to the superior court of Fulton County, Georgia. Frank E. Block Company and others (defendants in error) filed their petition to enjoin Brooks Morgan and his associates from using the word "Block" in the name of such corporation. Upon the hearing, after evidence and argument the judge passed an order granting an injunction restraining the defendants from obtaining a charter for the corporation to be known as "Block Candy Company." To this order the defendants excepted.

After a consideration of the record in this case this court is of the opinion that the injunction should have been refused and that the court erred in rendering the judgment and passing the order excepted to. Frank E. Block started manufacturing candy and crackers more than forty years ago. For a time the business was conducted as a partnership, but in 1910 the enterprise was incorporated under the name of Frank E. Block Company, and was carried on in that name until the sale of the business to the National Biscuit Company in March, 1927. For many years it distributed large quantities of candy to the Southern retail trade, and the word "Block" was featured in its labels and advertising matter, and came to stand for a certain quality and grade of candy in the territory where the products of the Frank E. Block Company were distributed, thereby becoming an important part of the good-will of the company; the word "Block," therefore, came to stand for a particular kind and quality of candy and to represent the product of the Frank E. Block Company. The words "Block" and "Block's" were used as trade-marks, not only on the packages containing candy, but also on the cartons in which the candies were shipped, and in large quantities of advertising matter that were distributed throughout the territory in which the goods were sold. Numerous trade-marks were registered, featuring the word "Block" on cubes or blocks arranged in various ways, with one letter of the word on each block or cube, and also with the initial letter "B" on a block or cube by itself. In purchasing the business of the Frank E. Block Company, including the "goodwill, trade-marks, copyrights, and patents owned by it or acquired or utilized in the conduct of the business," the plaintiffs in error contend that the National Biscuit Company and its assigns se-

cured the right to use the word "Block" in the manufacture and sale of candies and in conducting the business of selling candies known to the trade as "Block" candies. We are of the opinion that this contention of the plaintiffs in error is sound under well-recognized principles of law and under the pleadings and evidence in this case.

The Frank E. Block Company sold to the National Biscuit Company certain valuable physical properties, and in addition thereto sold the "good-will, trade-marks, copyrights, and patents owned by it and/or acquired or utilized in the conduct of the business heretofore carried on by Frank E. Block Company;" and the contract of sale provided that "A meeting of the stockholders of Frank E. Block Company will be called as soon as the same may legally be held under its by-laws, and appropriate action shall be taken at said meeting authorizing and directing the officers of Block to wind up its business, liquidate its affairs, and dissolve its corporate existence. It is understood, however, that said company shall have the right to maintain its corporate existence so long as may be necessary for the collection and liquidation of its assets not covered by this agreement of sale, or for the consummation or conclusion of any other of its corporate affairs; provided that no new activities are to be undertaken, the effect of which would be to prolong the corporate existence under the understanding in this regard as herein stated." The contract further provided that the Frank E. Block Company would discontinue manufacturing not later than April 15, 1927. By the sale of the good-will of the Frank E. Block Company the right to use the trade-name was also sold to the National Biscuit Company.

Good-will includes the trade-name. Although the trade-name may not be mentioned in the sale of a business taken over as a going concern, a deed conveying trade-marks, good-will, property and assets is broad enough to include the trade-name under which the vendor corporation had achieved a reputation. Herring-Hall-Marvin Safe Co. v. Hall's Safe Co., 208 U. S. 554 (28 Sup. Ct. 350, 52 L. ed. 676). From the statement of facts in that case it appears that J. L. Hall formed a corporation under the name of Hall Safe and Lock Company for the purpose of manufacturing Hall's safes. The business was afterwards sold to purchasers who conveyed it to Herring-Hall-Marvin Safe Co. Sons of J. L. Hall

later formed a company known as Hall's Safe Company and started the manufacture of safes to which they affixed the name Hall. Herring-Hall-Marvin Safe Company sought to prevent the use of the name Hall. There was a cross-bill by Hall Safe Company to prevent Herring-Hall-Marvin Company from using the word, but the court dismissed the cross-bill, holding that in the purchase of the business the corporation acquired the right to use the word "Hall" in its corporate name.

In the case of Slater v. Slater, 175 N. Y. 143 (67 N. E. 224, 61 L. R. A. 796, 96 Am. St. R. 605), the question was, whether the firm name was a firm asset and part of the good-will, and whether the purchaser of the assets and good-will would have a right to continue the business under the name of J. & J. Slater. The court said: "We think the learned court below was correct in so far as it decided that the firm name was inseparable from the good-will, and hence just as much a part of the assets . . as the good-will itself. This proposition seems to be supported by the great weight of authority. Pollock on Partnership, art. 39; 2 Lindley on Partnership, § 672; 1 Collyer on Partnership, 572; Churton v. Douglas, Johns. Ch. (Eng.) 174; Levy v. Walker, 10 Ch. Div. 436, 449; Banks v. Gibson, 34 Beav. 566; Rogers v. Tainter, 97 Mass. 291; Myers v. K. Buggy Co., 54 Mich. 215, 19 N. W. 961, 20 N. W. 545, 52 Am. Rep. 811; Snyder Mfg. Co. v. Snyder, 54 Ohio St. 86, 94, 43 N. E. 325, 31 L. R. A. 657; Lane v. Smythe, 46 N. J. Eq. 443, 19 Atl. 199; Fenn v. Bolles, 7 Abb. Prac. 202." The court further said: "The judgment should be modified on the plaintiff's appeal, so as to direct the sale of the good-will with the other assets, including the right to use the firm name, without conditions, restrictions, or limitations upon the purchaser."

In *Armstrong* v. *Atlantic Ice & Coal Corporation,* 141 *Ga.* 464 (81 S. E. 212), it appeared that the Atlantic Ice and Coal Corporation purchased certain assets and the good-will of the Athens Ice and Coal Company. Certain individuals thereafter applied to the superior court of Clarke County, Georgia, for incorporation under the name of Athens Ice & Coal Company. The corporation whose good-will had been sold filed a bill to enjoin the proposed corporation, and on its motion the Atlantic Ice and Coal Corporation was made a party plaintiff. This court sustained the injunc-

tion granted by the lower court, and held that the name of the corporation was included in the sale of the good-will. It is to be noted that the relief was granted solely on the petition of Atlantic Ice & Coal Corporation, the rights of which arose only through the sale. And it was said, in the opinion in that case: "While this is not strictly a trade-mark case, as where the owner of the trade-mark or the assignee of such, who acquired it either by express contract or purchase of the assets and good-will of the one who was the original owner of the trade-mark, seeks injunction against infringement, it is analogous to such a case. The Atlantic Ice & Coal Corporation was the purchaser, not only of all the assets of the Athens Ice & Coal Company, except certain stock on hand and accounts, but of the good-will of the Athens company. The term "good-will" has received various definitions; among them we find the following: ' Good-will is the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, or from celebrity or reputation for skill or affluence or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.' 4 Words & Phrases, 3128, and authorities cited. 'Good-will is the favor which the management of a business wins from the public, and the probability that old customers will continue their patronage and resort to the old place. Good-will is an advantage or benefit which is acquired by business establishments, beyond the mere intrinsic value of the capital stock. It is the general public patronage and encouragement which a business receives from its customers on account of its local position.' Vonderbank v. Schmidt, 44 La. Ann. 264 (10 So. 616, 617, 15 L. R. A. 462, 32 Am. St. R. 336). If this were strictly a trade-mark case, where the transferee under a contract of purchase and sale of the assets and good-will of another company was seeking to prevent the infringement of the trade-mark, though the trade-mark had not been mentioned in the contract of sale which passed title to the assets generally, the vendee of such assets and good-will would acquire the trade-mark of the vendor company, if the trade-mark was of that class which is applied to a commercial article to indicate its

origin at a particular manufactory or its origin with a particular dealer; and the right to prevent by injunction a threatened infringement would follow the ownership of the trade-mark."

In the case of Smith v. Brand, 67 N. J. Eq. 529 (58 Atl. 1029), the Chancery Court of New Jersey said: "The principle that the good-will of a trade conducted by a firm is one of its assets, and may be sold, and that the purchaser of the good-will of a business acquires the right to use the old name, and to prevent others from doing the like, is well settled." See, in this connection, Snyder Mfg. Co. v. Snyder, 54 Ohio St. 86 (43 N. E. 325, 31 L. R. A. 657), where it was held: "1. Upon the dissolution of a trading copartnership, its assets, including the good-will of the business, may be sold as a whole, either by the partners directly, or through a receiver, under an order of court, in a case to which they are parties; and a purchaser thereof, under either method of sale, is entitled to continue the business as the successor of the firm, and make use of the firm name for that purpose. 2. Where the purchaser transfers the property so acquired by him to a corporation of which he is a member, organized to succeed to the business, it may carry on the business in the same manner, under a corporate name, including the name which had been used by the firm." See also Lothrop Publishing Co. v. Lothrop, Lee & Shepard Co., 191 Mass. 353 (77 N. E. 841, 5 L. R. A. (N. S.) 1077); LePage Co. v. Russia Cement Co. (C. C. A.), 51 Fed. 941 (17 L. R. A. 354); Fish Wagon Co. v. LaBelle Wks., 82 Wis. 546 (52 N. W. 595, 16 L. R. A. 453, 33 Am. St. R. 72); Richmond Nervine Co. v. Richmond, 159 U. S. 293 (16 Sup. Ct. 30, 40 L. ed. 155); Auto Hearse Mfg. Co. v. Bateman (N. J.), 109 Atl. 735; Bank of Tomah v. Warren, 94 Wis. 151 (68 N. W. 549).

The National Biscuit Company having purchased the business of the Frank E. Block Company, including the good-will, trademarks, etc., owned by the latter company, the purchaser acquired the right to the use of the name of the vendor company and the essential parts or components of that name, and, having acquired this property right, could sell and assign it to others, as the National Biscuit Company is shown to have sold it or agreed to sell it to the plaintiffs in error; and the latter, having acquired by purchase this right to the use of the name, had the right to procure a charter incorporating a company to be known as the Block Candy

Company. The fact that it was stipulated in the contract that the Frank E. Block Company should have the right to maintain its corporate existence so long as necessary for the collection and liquidation of its assets or for the consummation of its other corporate affairs, did not have the effect to postpone the right of the purchasing company to the enjoyment of the good-will and the use of the trade-marks, copyrights, etc. The continuation of the corporate existence of the Frank E. Block Company was merely for the purpose specified—that is, for the winding up of its corporate affairs; for it is provided in the contract that "no new activities are to be undertaken the effect of which would be to prolong the corporate existence under the understanding in this regard." It may be that the provision for continuing the existence of the corporation for the specified purposes modifies to some extent a former part of the contract providing for the immediate dissolution of the corporation; but the language of the entire contract can not be construed as modifying or postponing the title of the purchaser to the good-will, trade-marks, copyrights, and other assets purchased, or the right to preserve those assets by their continued use. Nor do we think that the provision of the act of 1923 (Park's Code Supp. 1926, § 2823 (a-1), Michie's Code, § 2192 (1)), requiring fifteen days' notice, etc., is applicable in this case. Under the terms of the contract of sale, there had been a sale and purchase of the good-will, including the name of the former corporation, the Frank E. Block Company, to the National Biscuit Company; and, as ruled above, it could sell this property right, and it was not essential to give notice to the plaintiffs of the intention to use this name or its essential and component parts.

What we have said above decides the controlling issues involved; for while there are allegations of fraud on the part of Brooks Morgan, one of the plaintiffs in error, there is no attempt to set aside and have rescinded the contract of sale between the Frank E. Block Company and the National Biscuit Company or its right to the good-will, trade-marks, etc., which passed under that contract of sale.    *Judgment reversed. All the Justices concur.*