ANDREW REDHEFFER, Respondent, v. SAMUEL H. LEATHE, Appellant.

January 2, 1884.

1. CONTRACT OF HIRING — ASSIGNMENT. — A contract of hiring is personal in its nature and is not assignable.

2. —— A contract to serve a copartnership during a given period is dissolved by the death of one partner and the substitution of another during the term.

3. —— RULE OF CONSTRUCTION. — The language of a written contract should be given such a reasonable interpretation as will give effect to the intention of the parties as is gathered from the writing itself.

APPEAL from the St. Louis Circuit Court, ADAMS, J.
*Affirmed.*
LUCIEN EATON, for the appellant.
S. N. HOLLIDAY, for the respondent.

THOMPSON, J., delivered the opinion of the court.

This cause was tried in the circuit court upon the following agreed statement of facts :

" Henry Pettes and Samuel H. Leathe were copartners under the name of Pettes & Leathe when the contract sued on was executed.   That contract is read as a part hereof.

" ' ST. LOUIS, July, 1881.

" ' The following agreement, made this day between Andrew Redheffer and Pettes & Leathe, witnesseth : That the said Andrew Redheffer hereby agrees to well and truly serve the said Pettes & Leathe, as clerk, salesman, or auctioneer, exclusively, for the term of one year, beginning the 1st of September, 1881.   For which exclusive services said Pettes & Leathe agree to pay said Redheffer the monthly sum of one hundred and twenty-five dollars ($125), and a further sum of three hundred dollars at the termination of said term of service ; it being understood that, should the fore-

going agreement become void by reason of the death of either of the parties hereto, or by mutual consent, then, and at such time, the obligation to pay an equitable proportion of the reserved sum of three hundred dollars, shall mature and become due and payable to the said Andrew Redheffer, his heirs, or assigns. Signed in duplicate the day and year first above written.

> " ' PETTES & LEATHE,
> " ' ANDREW REDHEFFER.'

" On February 1, 1882, Pettes & Leathe dissolved partnership, turning over their business to Henry Pettes and his son, Henry B., who together continued the same business thereafter at St. Louis, under the firm name of Henry B. Pettes & Co. The store of Pettes & Leathe was burned in January, 1882. Redheffer continued to work for Pettes & Leathe until February 6, 1882, and then worked for the new firm in closing out the stock of the old firm, as shown by the annexed letter and bill, to wit:

> " ' ST. LOUIS, Feby. 22, '82.

" '*H. B. Pettes & Co.:*

" ' GENTS — Your proposal for me to fulfil the unexpired term of contract that I have with Pettes & Leathe, and the acceptance of the written contract, that you propose to take effect September 1, 1882, are before me ; and, after careful consideration of same, I must respectfully decline your proposition. Enclosed find bill for services to date. I shall be pleased to receive your check for same.

> " ' Very respectfully,
> " 'ANDREW REDHEFFER.

" ' To services from February 6 to 22, 16-28 of month . $85 60
" ' Credit by cash . . . . . . . . . . . . . 75 00

" ' Balance . . . . . . . . . . . . . . . $10 60
" ' 2824 North Twelfth Street.'

" Till February 22, 1882, when he went into business on his own account, he was paid $125 per month by Pettes & Leathe up to February 1, 1882, and from February 6th to the 22d, 1882, by the new firm $75. He was urged by Henry Pettes and Samuel H. Leathe to complete his contract at the store of the new firm, but refused to do so, claiming the dissolution of the firm of Pettes & Leathe terminated his relations to them of itself. Henry B. Pettes was an employee of Pettes & Leathe for a long time prior to and up to the dissolution. Before and after the dissolution of the firm of Pettes & Leathe, Redheffer told the members of the firm that he would not work for the new firm at all under the above contract, but would go there and help close out the old stock, which was the work named in the above bill."

Upon the foregoing facts the circuit court gave judgment for the plaintiff in the sum of $155. This amount would appear to be made up of two items: Five-twelfths of $300 — the " reserved wages " named in the contract, from September 1 to February 1, $125 ; six days' services under the contract from February 1 to February 6 inclusive, at $1,800 per year, which would be the rate per year ·which the plaintiff would receive under the contract, counting in the $300 " reserved wages " payable at the end of the year, $30.

1. The first point on which the appellant relies, is that the contract ought to receive a literal interpretation, and that, when so interpretated, it means that the plaintiff was to receive the " reserved wages " of $300 in two events only :   1. In case the contract should become void by reason of the death of one of the contracting parties.   2. In case it should be cancelled by mutual consent. We are of opinion that this is too narrow a view to take of the meaning of the contract. It proves too much. It assumes that the $300, instead of being wages to be paid for services rendered, it was something in the nature of a gratuity, an

equitable portion of which Pettes & Leathe were to pay on the happening of either one of the two events named, and in no other event. If this position is true, Pettes & Leathe might keep the plaintiff in their employ until the day before the expiration of the year, and then discharge him without cause, and thereby absolve themselves from the obligation to pay the reserved sum of $300, or any part thereof. There is a necessary implication from the terms of the instrument, that, in case the contract should become broken without the fault of the plaintiff, or in case Pettes & Leathe should become disabled from any cause from performing it on their part, the plaintiff should have an equitable proportion of the reserved sum of $300. When the firm of Pettes & Leathe dissolved, they voluntarily disabled themselves from carrying out the contract on their part; their dissolution was, *ipso facto*, a termination of it.

2. The remaining point is whether the fact that the members of the old firm desired the plaintiff to continue to work for the new firm to the end of the year under the terms of the contract, and he declined to do so, alters his right to recover that portion of the reserved wages which he had earned. We can not see that it does. The contract was personal in its nature. It can not possibly be argued that a contract extending over several months, by which one agrees to render daily personal services as a wage-worker is assignable. A conclusive answer to such an argument is that it may make all the difference in the world to a serving man who his master is. It may be " the difference of old Shylock and Bassanio." Not only may there be an important element of choice in respect of the master whose orders he must obey and whose temper he must accommodate, but there may be a like element in respect of solvency, differences in the work to be done, and in many other matters which might be suggested. Such a contract would make every contract of hiring a contract of peonage. Redheffer contracted " to well and truly serve"

Henry Pettes and Samuel H. Leathe. He did not contract to serve Henry Pettes and Henry B. Pettes. Just why he was not willing to serve the latter is wholly immaterial. It is sufficient that he did not agree to do it; and, having made one contract for himself, we can not impose a different contract upon him. In order to continue the service under the new firm, so as to be sure that he would get the $300 "reserved wages" at the end of the year, it would have been necessary for him to make a new contract with them. The contract was, then, terminated by the dissolution of the firm of Pettes & Leathe. It was terminated by the act of Pettes & Leathe, and without fault of the plaintiff. The sum of $300 "reserved wages" which was to be paid at the end of the year was not a gratuity, but so much of it as the court found due the plaintiff was money earned, and he has a right to it.

The judgment is affirmed. All the judges concur.