ELIZA C. BELCH, Executrix of J. ED. BELCH, Deceased, Appellant, v. PHIL. T. MILLER *et al.*, Respondents.

Kansas City Court of Appeals, November 19, 1888.

1. **Contracts:** INTERPRETATION OF: RULE GOVERNING: CASE ADJUDGED. In the interpretation of. written contracts, the rule most conspicuous and wide-reaching of all is, that the contract should be so construed as, if possible, to carry out what the parties contracting meant. And when the difficulty arises in giving a proper construction to a single clause, or one of the covenants of a lease like this, the whole instrument should be examined and considered in determining the meaning of such clause.

2. ———: FURTHER MEANS IN AID OF CONSTRUCTION: CIRCUMSTANCES AND ACTS. Where a contract is not expressed in precise terms, the facts and circumstances surrounding the subject-matter it contains may be looked to in aid of construction ; and the acts of parties to the instrument are entitled to great weight. Courts will hesitate to hold a contract meaningless which has been construed by the parties to it, or to give it a meaning repugnant to that which the acts of the parties have given it.

3. ———: SPECIFIC PERFORMANCE AND DAMAGES FOR NON-PERFORMANCE: DISTINCTION BETWEEN : CASE ADJUDGED. A greater degree of certainty is required in the terms of an agreement which is to be specifically executed in equity than is necessary in a contract which is to be the basis of an action at law for damages. An action at law is founded upon the mere non-performance by the defendant, and this negative conclusion can often be established, without determining all of the terms of the agreement with exactness. The action, in this case, is at law, for damages, and the court erred in excluding the evidence offered.

*Appeal from Cole . Circuit Court.* — HON. E. L. EDWARDS, Judge.

REVERSED AND REMANDED.

The case is stated in the opinion.

*McIntyre & Wagner*, for the appellant.

(1) The construction of a contract should be liberal. Unless an agreement be manifestly intended to be frivolous or inconsistent, it should be so construed as to give it some effect, for the parties must be supposed to have intended something by their agreement. Story on Cont. [5 Ed.] secs. 781, 783; Chitty on Cont. 79; *Thrall v. Newell*, 19 Vt. 202. (2) The construction of a written document is a matter of law, where the meaning is to be ascertained from the document itself; but where the meaning can be understood only from extrinsic facts, the construction is, generally, a question of fact for the jury. Story on Cont. [5 Ed.] secs. 793, 818; *School District v. Lynch*, 33 Conn. 330; *Randall v. Thornton*, 43 Me. 226. (3) If the meaning of the instrument, by itself, is affected with uncertainty, the intention of the parties may be ascertained by extrinsic evidence. *Fruin v. Railroad*, 89 Mo. 397, 404; *Crawford v. Elliott*, 78 Mo. 497. And if the ambiguity arises from extrinsic facts, extrinsic evidence may be introduced to explain it. *Brewster v. McCall*, 15 Conn. 294; *Edwards v. Smith*, 63 Mo. 119; 1 Greenl. on Evid. secs. 282, 283, and 286, which says: "And the judge cannot pronounce an instrument ambiguous or uncertain until he has brought to his aid all lights afforded by collateral facts and attendant circumstances." (4) In construing a contract the court will always endeavor to give to the contract a rational and just construction, and the comprehensive will be preferred to a more restricted sense, the general to the particular, and the common over the unusual sense. Parsons on Cont. [6 Ed.] 500. The best construction is that which is made by viewing the subject-matter of the contract as the mass of mankind would view it. *Schuylkill Nav. Co. v. Moore*, 2 Whart. 492; 1 Story on Cont. [6 Ed.] sec. 791. (5) The law will not pronounce a contract incurably uncertain, and therefore null, until it has cast upon it all the light to be gathered, either from a collation of all the words used, or from all contemporaneous

facts which extrinsic testimony establishes. 2 Parsons on Cont. [6 Ed.] 562 ; *Careless v. Careless,* 19 Ves. 601 ; *Scanlan v. Wright,* 13 Pick. 523 ; *Brewster v. McCall,* 15 Conn. 274. (6) It is a general rule that a contract is to be expounded according to the law or custom of the place where it is made, where the actual intention of the parties in this respect is not expressly stated, but is to be inferred from the nature, objects and occasion of the contract. 1 Story on Cont. [5 Ed.] sec. 805. (7) If the words in which the promise is expressed admit of more senses than one, the promise is to be construed in the sense in which the promisor had reason to suppose it was understood by the promisee. *White v. Hoyt,* 73 N. Y. 505, 511. (8) The plaintiff had a right to take a non-suit at any time before the case was submitted to the jury. R. S., 1879, sec. 3556 ; *Collier v. Swinney,* 13 Mo. 478 ; *Templeton & McKee v. Wolf,* 19 Mo. 101 ; *Lawrence v. Schreve,* 26 Mo. 492 ; *Leimer v. Railroad,* 26 Mo. 26. (9) The action of the trial court in refusing to allow plaintiff to read in evidence the contract sued on, and to allow other evidence offered by plaintiff, struck at the root of the matter and made it impossible for plaintiff to recover, and plaintiff had no course left but to take a non-suit and then move to set the same aside. *Laton v. Riney,* 33 Mo. 87 ; *Hageman v. Moreland,* 33 Mo. 86 ; *State ex rel. v. Gaddy,* 83 Mo. 138.

*J. L. Smith* and *F. M. Brown,* for the respondents.

(1) Ichthyologists have placed fishes in the fifth class of vertebrate animals. This class is divided into orders. The species number many hundreds. "Fish" is a generic term. 2 Johnson's Natural History, 419, *et seq.;* Essay in Classification (Agassiz), 187 ; 9 American Encyclopedia, 158 ; Webster's Unabridged Dictionary— Fish. (2) The clause in the contract, which was excluded by the circuit court from evidence upon the objection of the defendants, provided that defendants should "excavate and remove the earth from the lower end of said pond to the extent of one acre, so as to deepen the bottom thereof sufficient to support fish therein the year

around." It is vague and uncertain in that specifications are omitted therefrom ; that it is wanting in detail ; that material matters are left so obscure and undefined that its meaning cannot be ascertained with sufficient certainty, and it is therefore void, and cannot be made the basis of an action. Bishop on Cont. [Enlarged Ed.] secs. 316, 390 ; *Adkins v. VanBuren*, 77 Ind. 447 ; Chitty on Contracts, 77 ; 1 Greenl. Ev., sec. 300 ; *Palmer v. Albee*, 50 Iowa, 429 ; *Culver v. Culver*, 39 N. J. 574 ; *Taylor v. Williams*, 45 Mo. 80 ; *Underwood v. Underwood*, 48 Mo. 527 ; Pomeroy on Contracts, sec. 145. (3) No court could direct a specific performance of this clause of the contract. The rule in such cases is that if it appears that the things to be performed are in their nature incapable of execution by the court, or that the needful specifications are omitted, or that the material matters are left by the parties so obscure or undefined, or so in want of details, or that the subjects of the agreement are so conflicting or incongruous that the court cannot say whether or not the minds of the parties have met upon all the essential particulars, or if they did, it cannot say exactly upon what substantial terms, or trace out any particular line, where the minds met, etc., the contract will not be enforced. *Blanchard v. Railroad*, 31 Mich. 43 ; *Railroad v. Lewis*, 76 Va. 833 ; *Magee v. McMamus*, 12 Pac. Rep. 451 ; *Schneling v. Kenisel*, 45 Wis. 325 ; *Nichols v. Williams*, 22 N. J. Eq. 63 ; *Cholsan v. Thompson*, 2 Wheat. 336 ; *Bowman v. Cunningham*, 78 Ill. 48 ; Fry on Spec. Perf., sec. 317 ; 1 Story Eq. Jur., sec. 767. An agreement to take of another a house on its being "put in thorough repair, the drawing-rooms to be handsomely decorated according to the present style, paint required both inside and out, although for some parts one coat might be sufficient," is so uncertain that it cannot be said how much or what either party meant, and, there being no evidence of the coincidence of their wills, there is no contract. *Taylor v. Portington*, 7 DeG., M. & G. 328. An agreement to sell "any of my black-walnut trees, not exceeding fifteen in number, that will girth eight feet

six inches in circumference and under ten feet, at two dollars each," will be void for uncertainty where there were more than fifteen such trees on the land. It cannot be told which trees were meant in such case. *Dunkart v. Rinehart*, 89 N. C. 354. (4) Parol evidence is never admissible to explain an ambiguity not raised by extrinsic facts. Chitty on Cont. [9 Am. Ed.] top p. 107; *Dunkart v. Rinehart, supra.* Where there was nothing in a contract of lease describing the particular tract of land intended to be leased, and no attempt at description except to give the name of the county and state where the land was situate, the court would not allow the omission to be supplied by parol. *Dingman v. Kelley*, 17 Ind. 717; *Baldwin v. Kerlin*, 47 Ind. 426. Where the contract is uncertain, there can be no recovery. *Sherman v. Kitsmiller*, 7 S. & R. [Pa.] 45; *Zaleski v. Clark*, 44 Conn. 218. There is no contract unless the parties assent to the same thing, and in the same sense. *Thompson v. Ray*, 46 Ala. 224. (5) The ambiguity in the clause in said contract is patent, and the plaintiff cannot be "holpen" (cured) by the introduction of extrinsic parol evidence. When a perusal of the instrument shows plainly that something more must be added before the reader can determine what of several things is meant, the rule of law is inflexible that parol evidence cannot be admitted to supply the deficiency. *Palmer v. Albee*, 50 Iowa, 429; *Campbell v. Johnson*, 44 Mo. 250; *Jennings v. Brizeadine*, 44 Mo. 334; *Bradley v. Packet Co.*, 13 Peters [U. S.] 89; 1 Bouvier's Law Dict. [5 Ed.] 95; 1 Greenl. Ev., sec. 299. This case does not come within the rule laid down in *Edwards v. Smith*, 63 Mo. 119, and kindred cases. (6) Had plaintiff been permitted to read said vague and uncertain clauses of said contract to the jury, she would have been entitled to but nominal damages. There was no injury alleged for which compensation could be awarded. 1 Sutherland on Dam. 9. There is no available error in sustaining a demurrer to a complaint which is good for nominal damages only. *Adkins v. Town*, 77 Ind. 447; *Axtel v. Chase*, 77 Ind. 74. The objection to the introduction of

the deposition offered by the plaintiff was in the nature of a demurrer to the petition based upon the grounds that it did not state facts sufficient to constitute a cause of action. (7) An implied contract or an implied obligation may be so vague and indefinite as to be incapable of enforcement. *Jones v. Durgin,* 16 Mo. App. 370.

RAMSAY, J.—This suit was instituted by the appellant Eliza C. Belch, as executrix of the last will of J. Ed. Belch, deceased, against the respondents, founded upon an alleged breach of one of the clauses of a written lease, which was in words and figures following :

"Whereas the parties hereto are desirous of constructing and maintaining, at some convenient and accessible place, a pond for the growth and production of wild rice, celery, asparagus and other feed for wild fowls, to the use therefore, that this may be accomplished, it is hereby agreed by and between J. Ed. Belch, party of the first part, and other persons whose names are hereto signed, parties of the second part, that the party of the first part hereby leases to the parties of the second part, for the term of five years from the date hereof, for the annual rent of fifty dollars, payable on the first day of January in each year, during the continuance of this lease, the following real property situated in the county of Osage and state of Missouri, to-wit: So much of a natural pond of water situated on the east side of said Osage river and between the Missouri Pacific Railway Company's track and Caddie creek, and on the land of the party of the first part, and more accurately described as follows, to-wit: Beginning on the west bank of said pond at a point where the same intersects the line running east and west and dividing the land of the late Conrad Kaulin and the said Belch, and upon which said line there is now a Virginia worm fence, and from thence along the bank of said pond with a fence for some distance on said bank and in a northerly direction on the west side of said pond to the west end of the dyke about twelve hundred yards ; from thence easterly

one hundred and twenty-two yards across said pond to a point to be agreed upon by a survey to be made, and below a point where a certain run or branch empties into said pond ; from thence southerly along said agreed line of said pond to the said boundary line between the lands of said Belch and Kaulin, and from thence westerly along said last-mentioned boundary line to the place of beginning.   Also one-half acre of land to be selected and agreed upon by the parties hereto, as near said pond· as may be on the lands of said Belch, wherein to erect a hunter's lodge, also a convenient right of way through the lands of said Belch from the Osage river to said pond and half-acre of land.   In further consideration of the premises it is agreed that the parties of the second part shall construct and maintain the dykes and embankments that shall be necessary to prevent the water of said pond after its improvements, from overflowing the cultivated fields of said Belch.  [ It is further agreed that the parties of the second part hereby bind themselves within a reasonable time to excavate and remove the earth from the lower end of said pond to the extent of one acre, so as to deepen the bottom therein sufficient to support fish therein the year around. ] It is further agreed that the parties of the second part shall have the right to erect and maintain a fence around said pond composed of posts and rails, or of rails, planks or barbed wire, and if of the latter material, then there shall be placed on said barbed-wire fence, at or near the top thereof, a plank or rail to warn stock of the presence thereof and location of said wire fence.   It is further agreed that the said parties of the second part shall have the right to remove any timber they may require for posts or rails in making said fence or the erection of said hunter's lodge, or in the improvements of said pond for the growing wild rice, etc., within the bounds of said leased grounds.   It is further agreed that the party of the first part will grant to no other persons any license or right to shoot on said pond or near the same, or to enter upon his lands to shoot at any game thereon.   It is further agreed that

the parties of the second part shall have the right to connect with any and use any fence near, around or along said pond or any part thereof. It is further agreed that the parties hereto of the second part shall have the privilege of surrendering said lease after three years, the party of the first part retaining for his own use all improvements made thereon by the parties of the second part. It is further agreed that no new party or parties other than the parties to the contract shall be entitled to any privilege or right by virtue of this agreement, without the consent of said Belch; this however, is not intended to limit the right of parties of the second part to invite any company—their friends—when hunting or fishing on the grounds, but merely to limit the transfer or assignment of any right hereby acquired. Witness our hands and seals this second day of January, 1882." Which was properly signed and sealed by the parties.

The appellant alleged in her petition, in substance, that the respondents entered into and remained in possession of the premises described in this lease for a period of three years and until they quit possession thereof of their own accord; that her testator and his executrix have performed all of the conditions of said lease upon their part; that the respondents did not, during the time they occupied said premises, nor have they yet, performed their agreement and covenant "to exca-, vate and remove the earth from the lower end of said pond," or from any portion thereof, "to the extent of one acre," or to any extent whatever, "so as to deepen the bottom therein sufficient to support fish therein the year around," but on the contrary thereof, that respondents have omitted, failed and refused to keep and perform this agreement and covenant upon their part, to her damage in the sum of fifteen hundred dollars, for which she asked a judgment.

The answer of respondents consisted of two counts, in the first of which the execution of the lease is admitted and certain violations of the conditions of it

upon the part of J. Ed. Belch are alleged, which it is stated, resulted in such a partial failure of consideration as exonerated respondents from the liability to construct the fish-pond mentioned in appellant's petition. Among other allegations of this count is the following: "The purpose and object which defendants had in view in entering into said written lease, as appears by reference thereto, was to secure a wild-fowl preserve and a fish-pond ; that said water-basin was well adapted, when rented by these defendants, for that purpose ; that said water-basin was a long narrow strip of land in and around which were standing and growing a dense forest of great trees and undergrowth ; that these had constituted a favorite resort and feeding grounds of various aquatic birds, which in season furnished good shooting for sportsmen." The second count, in substance, alleged that by and with the consent and approval of Belch, the respondents constructed certain embankments so as to hold the water in the lower end of said pond to the depth of four feet, which, it was alleged, "was sufficient to support fish therein the whole year round," and which was superior to the excavated pond mentioned in the petition, and which was substituted therefor. The new matter set up in respondents' answer was denied in appellant's reply.

At the trial respondents interposed objection to the introduction of the lease in evidence, upon the ground that the clause contained in brackets in the instrument as above set forth, was so indefinite, uncertain and wanting in details that it could not be made the basis of an action, which objection the court sustained. The appellant then offered to introduce the testimony of experts tending to show what kinds of fish were indigenous to, and what kinds of fish were cultivated in Central Missouri, and what depth of water in a pond of one acre in area is necessary in that locality to maintain such fish the year round. The court, sustaining the objections of respondents to the introduction of such evidence, or any evidence, the appellant took a non-suit

with leave to set the same aside, and after an unsuccessful effort to have this non-suit set aside the cause is brought to this court, where appellant assigns as error the action of the trial court in sustaining respondents' objections to the introduction of such evidence.

I. In the interpretation and construction of written contracts the rule most conspicuous and wide-reaching of all is, that the contract should be so construed as, if possible, to carry out what the parties contracting meant. Bishop on Cont. [Enlarged Ed.] sec. 380, and cases cited; 2 Parsons on Cont. [5 Ed.] 494, *et seq.; County of Johnson v. Wood,* 84 Mo. *loc. cit.* 509; *Bent v. Alexander,* 15 Mo. *loc. cit.* 109; *Redheffer v. Leath,* 15 Mo. App. 12. And when the difficulty arises in giving a proper construction to a single clause, or one of the covenants of a lease like this, the whole instrument should be examined and considered in determining the meaning of such clause. 2 Parsons on Cont. [5 Ed.] 501; Bishop on Cont. sec. 382. Applying this rule, can it be said that the true meaning and intention of the parties to this lease cannot be gathered from the instrument itself? Its initiatory words are : "Whereas the parties hereto are desirous of constructing and maintaining at some convenient and accessible place a pond for the growth and production of wild rice, celery, asparagus and other feed for wild fowls, to the use, therefore, that this may be accomplished," etc. The premises are described in one part of the lease as "so much of a natural pond of water situate on the east side of the Osage river and between the Missouri Pacific Railway Company's track and Caddie creek." That it was known that this pond was or might be subject to overflows is shown by the agreement of respondents to "construct and maintain all the dykes and embankments that might be necessary to prevent the water of said pond, after its improvements, from overflowing." Respondents expressly reserved the right to be accompanied by friends "when hunting or fishing on the grounds." Other provisions were inserted to prevent

the interference of trespassers. In line and perfect harmony with these features of the lease, the respondents agreed "within a reasonable time, to excavate and remove the earth from the lower end of said pond, to the extent of one acre, so as to deepen the bottom therein sufficient to support fish therein the year round." At the surrender or expiration of the lease, Belch was to retain for his own use all improvements made by respondents.

From a consideration of the instrument, alone, I think it more than probable that it was the purpose and intention of the parties, well understood at the time, to so improve this natural pond, in the manner specified in this clause of the lease, that it would, at all seasons of the year, support fish, such fish as were native to the waters of the Osage river, and the lakes and ponds which are supplied from such river, and such fish as might reasonably be expected to live and propagate in such pond when improved. This, I think, would be a fair and reasonable construction of the clause of the lease under consideration.

II. Where a contract is not expressed in precise terms, the facts and circumstances surrounding the subject-matter it contains may be looked to in aid of construction; and the acts of parties to the instrument are entitled to great weight. *Cartwright v. Callaway County*, 10 Mo. 663; *Patterson v. Camden*, 25 Mo. 13; *Dobbins v. Edmonds*, 18 Mo. App. 307; *Crawford v. Elliott*, 18 Mo. 497. It appears in the pleadings in this case, both in the petition and answer, that the respondents entered into and remained in possession of the premises described in the lease for a period of three years. It is almost incredible that respondents could remain in doubt or uncertainty as to the terms and conditions of the lease or as to the obligations it imposed upon them. It is stated in their answer "that the purpose and object which defendants had in view in entering into the lease * * * was to secure a wild-fowl preserve and a fish-pond, and that said water-basin was well adapted, when rented by them, for that purpose." This

statement is followed by matters pleaded as a justification for non-performance of the agreement contained in this clause according to its letter. In view of this, it is a little singular that the respondents should discover at the trial that this clause of the contract was too indefinite and uncertain to impose an obligation upon them, for the violation of which an action would lie against them. Respondents also set up the performance of a substituted contract in defense of an action founded on this clause. Courts will hesitate to hold a contract meaningless which has been interpreted and construed by the parties to it, or to give it a meaning repugnant to that which the acts of the parties have given it. *St. Louis Gas Light Co. v. City of St. Louis*, 46 Mo. 121 ; *Goldman v. Wolf*, 6 Mo. App. 490 ; Bishop on Cont. sec. 412.

III. I have not overlooked the suggestion of the learned counsel for respondents, that "no court could direct a specific performance of this clause of the contract," nor have I failed to give the best consideration I could to their arguments and citations in support of it. It is not necessary to a proper determination of this cause to decide that question. "A greater amount or degree of certainty is required in the terms of an agreement, which is to be specifically executed in equity, than is necessary in a contract which is to be the basis of an action at law for damages. An action at law is founded upon the mere non-performance by the defendant, and this negative conclusion can often be established without determining all the terms of the agreement with exactness." Pomeroy on Cont. and Spec. Perf., sec. 159 ; Fry on Spec. Perf. [2 Am. Ed.] side p. 102, *et seq. ; Foster v. Kimmons*, 54 Mo. 488. This is an action at law for damages. The subject-matter involved has a peculiar aptness for a jury. I am of the opinion that the trial court erred in not permitting the evidence offered by appellant to go to the jury. The judgment is reversed and the cause is remanded. HALL, J., concurs; ELLISON, P. J., in the result.