SHUNK, APPELLANT, *v.* SHUNK MFG. CO., APPELLEE.

(No. 1467—Decided July 11, 1949.)

*Mr. Charles F. Schaber,* for appellant.

*Messrs. McConnell, Blackmore, Cory & Burke, Mr. Baird Johnson* and *Mr. C. Victor Vollrath,* for appellee.

Fess, J.  This is an appeal on questions of law from a finding and judgment by the court, a jury having been waived, in favor of the defendant.

For many years plaintiff had been general manager of a partnership engaged in a manufacturing business in Bucyrus, Ohio.  As of August 1, 1943, the partnership of which plaintiff was a member sold its business to another partnership consisting of new personnel (hereinafter referred to as the McGraw partnership). The sale included all the assets and goodwill of the partnership, including its name, Shunk Manufacturing Company, except the accounts receivable of the Shunk partnership.  Separate and apart from the sale of the business, the plaintiff entered into an employment contract with the defendant, Shunk Manufacturing Company (the McGraw partnership).  After reciting that the defendant had acquired the business, that plaintiff had managed the business for many years and was entirely familiar with it, and that the partners of defendant were not familiar with the business and not in position at once to undertake its management and desired to retain plaintiff a limited period to manage the business, the defendant agreed to employ plaintiff as general manager of the business from August 1, 1943, to July 31, 1945, for the sum of $50,000 payable in monthly installments.  Plaintiff agreed to continue his managerial duties ''as has been his custom during the past several years, and to use his best efforts in behalf of the company and its interest and welfare with the understanding that matters of special import-

ance are to be brought to the attention of the company for its consideration.''

The contract had a somewhat unusual provision that, in the event of the death or incapacity of the plaintiff, or if the company should discharge him without ''good and just legal cause'' then the company would, within 30 days from the happening of any of such events, pay to plaintiff or his estate the unpaid balance of the $50,000.

The contract was executed September 1, 1943, at which time plaintiff was 77 years of age. On September 2, 1943, an announcement was posted on the stationery of Shunk Manufacturing Company carrying the name of plaintiff as general manager and signed by one of the new partners to the effect that Arthur E. Socin had been appointed general superintendent with full authority and responsibility for the management of all shop operation and that Arno W. McGraw had been appointed treasurer and office manager with full responsibility of treasurer, accounting and office procedure. The announcement stated also that the entire shop personnel would receive all orders directly from Socin and the entire office personnel from McGraw. Although McGraw was a newcomer, Socin had been an employee of plaintiff for 20 years and shop superintendent for several years under the supervision of plaintiff. Plaintiff construed the announcement as depriving him of authority and responsibility over the shop and office.

As of March 31, 1944, McGraw and another partner sold their interests to new partners, but McGraw remained in the employ of the second partnership as treasurer and office manager. The articles of the McGraw partnership provided that in the event of the sale of an interest to any person other than a partner, such sale would dissolve the partnership. Plaintiff

had no notice or knowledge regarding the formation of the new partnership until at the trial.

From September, 1943, to April, 1944, plaintiff spent a limited number of hours at the plant, following the same schedule he had observed prior to the sale, but after April 1, 1944, he reported at the plant with less frequency and remained shorter periods of time. The record is silent as to what plaintiff did at the plant or what his activities were. Plaintiff says he had no authority to do anything and was ignored by the personnel. Up to April 1, 1944, McGraw was the only resident partner regularly in the plant and thereafter apparently no partner was actively engaged in the plant. For all the evidence discloses, the business merely ran itself without supervision except by McGraw and Socin. As to the period from September to December, 1944, the testimony was in conflict. McGraw testified he saw plaintiff in the plant only on payday at the end of each month. Plaintiff testified that he was at the plant at intermittent intervals but with less frequency than the year preceding. Plaintiff, however, was paid his compensation regularly up to December 31, 1944, and no complaint was ever made by the partners concerning plaintiff's failure to report regularly for duty.

In the spring of 1944, a dispute arose between plaintiff and the defendant (McGraw partnership) over the old accounts receivable and the inventory, and in September 1944, The Jay Que Company brought an action against the defendant relating to this dispute. The Jay Que Company was a partnership organized October 13, 1943, by plaintiff and his former partners to handle the accounts receivable of the old Shunk partnership.

Under date of December 28, 1944, plaintiff received a letter from counsel, who had represented the Mc-

Graw partnership at the time the contract was negotiated, referring to the contract and stating:

"The partners of Shunk Manufacturing Company are advised that you have devoted no time to the management of the business of the company for the past few months and you have not used your best efforts in behalf of the company and its interests and welfare. On the contrary, in their opinion, you have, in many respects, acted against the best interests of the company. Accordingly, they have directed me to notify you that for the reasons stated they do hereby terminate your employment as general manager of Shunk Manufacturing Company, effective at December 31, 1944."

Plaintiff filed his petition herein against Shunk Manufacturing Company, a partnership, on February 19, 1945. The petition does not designate the individual names of the partnership defendant but since it is brought on the theory of damages for breach of the employment contract it follows that the defendant herein is the McGraw partnership. After reciting the terms of the contract, plaintiff alleges:

"Plaintiff continued in said employment until the 31 day of December, and was ready and willing to remain in the same for said term, but defendant on said day, without good and just legal cause, in violation of said contract, discharged plaintiff, and has thence hitherto refused to allow plaintiff to continue in said employment. To his damage $14,583.33, for which he asks judgment, with interest from February 1, 1945."

The case was tried on December 10 and 11, 1945, before the court without a jury, and on May 4, 1946, the court found for the defendant, and thereafter denied plaintiff's request for findings. (From the record it appears that a motion to quash service upon the defendant by serving same upon McGraw, upon the

ground that McGraw was not a partner, was overruled.)

Plaintiff thereafter filed notice of appeal accompanied by the usual transcript of docket and journal entries and bill of exceptions. In this first appeal, plaintiff noted 11 assignments of error, including the refusal of the request for findings. In the minutes entered on the trial docket as of January 21, 1947, it appears that the judgment was reversed and remanded to the Common Pleas Court for further proceedings because of the refusal of the request for findings, and that the other assignments of error were overruled, including those relating to the weight of the evidence. The journal entry as recorded in the transcript refers only to the failure to make findings, but the original journal entry, after reversing for such error, recites, "no other prejudicial error appearing in the record" the cause is remanded, etc.

In this appeal, appellant presents 14 assignments of error, including those assigned on the first appeal. With respect to those errors presented in the former appeal, appellee asserts that the former judgment of the Court of Appeals is binding upon a subsequent review in such court on every question determined by the former judgment, including the question that the finding was not against the weight of the evidence.

At the former hearing, the judgment was reversed because of the failure to make findings. The express statutory purpose of findings is "with a view of excepting to the court's decisions on questions of law involved in the trial." The chief purpose is to require the court to state its conclusions of fact when it tries the case. This enables a party to determine whether such findings of fact warrant the legal conclusions reached by the court in rendering judgment. A further purpose is to avoid the necessity of an extended

bill of exceptions on review. The important right of the litigant is to have a statement of facts, in a proper case, upon which the court's judgment was based, whereas the statement of the court's legal conclusion, aside from its judgment, is unimportant. *Bauer* v. *Cleveland Ry. Co.*, 141 Ohio St., 197, 203, 47 N. E. (2d), 225. Where one of the errors relied upon in a review is that the judgment is against the weight of the evidence and the record contains all the evidence, the refusal to make findings is not prejudicial. *Oxford Township* v. *Columbia*, 38 Ohio St., 87, 94; *Bauer* v. *Cleveland Ry. Co.*, *supra*; *In re Guardianship of Zimmerman*, 78 Ohio App., 297, 302, 70 N. E. (2d), 153.

At the former appeal, this court had a complete bill of exceptions and apparently reviewed the evidence, but nevertheless reversed the judgment for the failure to make findings. Possibly this was because on appeal to the Supreme Court it would reverse the judgment because that court could not determine that the appellant had not been prejudiced without weighing the evidence. *Cleveland Produce Co.* v. *Dennert*, 104 Ohio St., 149, 135 N. E., 531.

On this appeal, is this court bound by its former decision by different personnel? The fact that the personnel of another court is sitting on this appeal by designation has no significance. It is the same court.

The first assignment of error that claimed attention at the former appeal was the refusal of the trial court to "state in writing the conclusions of fact found separately from the conclusions of law." Section 11421-2, General Code. That assignment gave rise to two questions: (1) Was the plaintiff entitled to such statement?, and if so, (2) was he prejudiced by the refusal thereof?

This court answered both questions in the affirma-

tive, and as no appeal was taken from that judgment and remand, that matter is now *res judicata*. As that conclusion was reached, there was no occasion to consider any other errors assigned. Since the purpose of findings is "with a view of excepting to the court's decision upon questions of law," until a party entitled to the findings has them, he cannot determine whether he wants to appeal, and if he does, what errors he may want to assert, and without it the reviewing court cannot consider his assigned errors. This court now has before it for review all the errors asserted in this appeal, without regard to what it may have said or done in the previous appeal. We, therefore, have reviewed the entire record and, after considering those errors assigned on the former appeal, find none of those relating to the trial below prejudicial except as hereinafter commented upon.

At the former hearing the court reversed the judgment because of the failure to make findings and remanded the cause for further proceedings, without specifying the point at which the cause should be resumed or that a new trial be had. Upon rehearing before the trial court, plaintiff requested leave to withdraw his reply and to file a motion directed to the amended answer, and also for a trial *de novo*, all of which were denied. Thereupon, pursuant to the mandate, the court filed conclusions of fact and conclusions of law, and the second judgment was entered thereon. Plaintiff contends that upon the reversal and remand he was entitled to a new trial. However, the only error upon which the reversal was based was the failure to make findings, which occurred after the parties had rested. Thereupon, upon remand, the case should proceed from the point where the error occurred and the action of the trial court in refusing leave to plead further and denying a new trial was

proper. *Commissioners of Montgomery County* v. *Carey,* 1 Ohio St., 463. Certainly no prejudice resulted from such action, since the entire proceeding at the trial is before us for determination upon the record.

The serious problem presented on this appeal is the conclusion of law that plaintiff did not maintain the burden resting upon him to prove by a preponderance of the evidence that the defendant breached the contract. As hereinbefore shown, the terms of the contract were unusual. Were we permitted to speculate, we would infer that the contract was merely a device to pay plaintiff an additional $50,000 for his interest in the partnership sold. True, he was required to devote his best interests to the affairs of the company and perform in the same manner as he had been accustomed, but the time to be devoted and the manner of his performance were left to his own determination. In the event of incapacity or death, he or his estate was to be paid any balance due under the contract. He was likewise to be paid in event of his discharge without just legal cause. The day after the contract was signed, the company took from him his authority over shop, office and financial matters. The company employed a sales engineer working in the field who occupied plaintiff's office on occasions when he was at the plant. Plaintiff was ignored by the new owners, all of whom were absentees except McGraw, the resident partner and treasurer. The only incident that McGraw could relate when he consulted plaintiff was with regard to a patent on the D. K. spreader. At no time did the owners or their representatives at the plant make any complaint to plaintiff concerning his performance prior to the letter discharging him. If he was derelict in his duties, he would not be entitled to warning notice prior to discharge, but the above circumstances would tend to show that his failure to

report regularly for duty was not regarded as a breach of the contract until some time in December 1944. McGraw had reported the matter to the owners as early as April of that year.

The trial court found in part as follows:

"On or about March 31, 1944, certain original members of the preceding partnership withdrew from the original partnership and certain other individuals and a trust estate came into the original partnership. Plaintiff had no knowledge of such change in personnel and was not adversely affected by reason of such happening. Up to the time of the dismissal of plaintiff, plaintiff was paid the entire compensation owing to him under the terms of the contract, up to the date of dismissal. There is nothing in the record to indicate that plaintiff would not have been paid full compensation up to the time of the termination of the contract, if plaintiff had not violated the terms of the contract and failed to fulfill the duties imposed upon him by such terms."

As partnerships rest upon the agreement of the parties, a dissolution occurs and a new partnership is formed whenever a partner retires or a new one is admitted. *Snyder Mfg. Co.* v. *Snyder,* 54 Ohio St., 86, 95, 43 N. E., 325, 31 L. R. A., 657. A retiring partner remains liable for all the existing debts of the firm, to the same extent as if he had not retired. *Rawson* v. *Taylor,* 30 Ohio St., 389, 27 Am. Rep., 464. Upon the dissolution of the partnership, plaintiff was entitled to actual notice thereof. After dissolution, in the language of Judge Story, " 'none of the partners can create any new contracts or obligations binding upon the partnership; none of them can buy or sell, or pledge goods on account thereof; none of them can endorse or transfer the partnership securities to third persons, or in any other way make their acts

the acts of the partnership. In short, none of them can do any act, or make any disposition of the partnership property or funds, in any manner inconsistent with the primary duty, now incumbent on all of them, *of winding up the whole concerns of the partnership.*' " *Palmer* v. *Dodge,* 4 Ohio St., 21, 28, 62 Am. Dec., 271.

The voluntary dissolution of the defendant partnership terminated plaintiff's employment without fault on his part. *Redheffer* v. *Leathe,* 15 Mo. App., 12; *Brace* v. *Calder* (1895), 2 L. R., Q. B., 253. Cf. *Gaspar* v. *United Milk Producers of California,* 62 Cal. App. (2d), 546, 144 P. (2d), 867; *Matthews* v. *Minnesota Tribune Co.,* 215 Minn., 369, 10 N. W. (2d), 230.

As between the members, the new partnership could continue the business of Shunk Manufacturing Company, but as to strangers, the legal status of the McGraw partnership ceased to exist except for the purpose of winding up its affairs. Plaintiff's employment contract could not be assigned to the new partnership without his consent, and the evidence does not indicate it was so assigned or thàt plaintiff ever agreed to work for the new partnership. Nor was plaintiff obligated to work for the defendant incident to the winding up of its affairs. Under such circumstances, the payment by the successor partnership of plaintiff's salary from April 1 to December 31, 1944, did not create a novation or relieve the defendant of its obligation to plaintiff under its contract. Such payment, however, did amount to a reduction of plaintiff's damage. The fact that the plaintiff was not harmed by the change of ownership of the business and might have continued to receive compensation had he reported regularly for duty is not material. To justify the discharge of an employee, it is sufficient for an employer to show that the employee was

guilty of a default in duty such as unjustifiable absence, the natural tendency of which was to injure the business, and actual injury thereto need not be shown (*Beckman, Jr., v. Garrett,* 66 Ohio St., 136, 64 N. E., 62), but in the instant case the defendant employer had no going business. So it does not follow that plaintiff's absence tended to injure defendant's business.

Having made it impossible for the plaintiff to perform his contract with it for any of the time after it passed out of existence, the defendant cannot be heard to say that plaintiff did not perform his part of the contract for any of the employment period after defendant made performance by him impossible.

In the instant case, plaintiff seeks to recover damages for breach of the contract, not to recover compensation due under the contract. *James v. Allen County,* 44 Ohio St., 226, 6 N. E., 246, 58 Am. Rep., 821; *Tiffin Glass Co. v. Stoehr,* 54 Ohio St., 157, 163, 43 N. E., 279. Parenthetically it may be noted that the *Stoehr case* holds that a dissolved corporation remains liable to an employee for damages for breach of employment contract.

We have considered the absence of any evidence on mitigation of damages. In *Allen, Heaton & McDonald, Inc., v. Castle Farm Amusement Co.,* 151 Ohio St., 522, 527, 86 N. E. (2d), 782, the Supreme Court said:

"There are authorities holding that the burden of proving matters in mitigation or reduction of the amount of plaintiff's damages rests upon a defendant. 1 Sedgwick on Damages (9 Ed.), 447, Section 227. However, such authorities should not be relied upon as imposing the burden on a defendant to prove one of the essential facts which must be established in order to determine what plaintiff's damages are.

There can be no mitigation or reduction of damages until damages are proved."

In the instant case the employment contract provided that should the plaintiff be discharged "without good and just legal cause, then the company shall, within thirty days from the happening of any of said events, pay to the party of the second part, or to his estate," etc. It therefore follows that, since plaintiff was discharged without good and just legal cause on March 31, 1944, as a matter of law the defendant became obligated to pay plaintiff within 30 days the unpaid balance due upon his contract, regardless of any questions of mitigation of damages. Plaintiff, however, seeks only recovery of the unpaid balance due as of January 1, 1945.

The judgment below is, therefore, reversed, and final judgment is entered herein for plaintiff in the amount prayed for in his petition.

*Judgment reversed.*

CONN and CARPENTER, JJ., concur.

CONN, CARPENTER and FESS, JJ., of the Sixth Appellate District, sitting by designation in the Third Appellate District.