FAIRWAY DEVELOPMENT
COMPANY, Plaintiff,

v.

TITLE INSURANCE COMPANY OF
MINNESOTA, Defendant.

No. C84–2570A.

United States District Court,
N.D. Ohio, E.D.

Aug. 26, 1985.

Lee Rosenthal, Wm. J. Ross, Canton, Ohio, for plaintiff.

Frederick M. Lombardi and James D. Kraus, Buckingham, Doolittle & Burroughs, Akron, Ohio, for defendant.

MEMORANDUM OPINION

DOWD, District Judge.

Before the Court are the motions of the plaintiff, Fairway Development Company, and the defendant, Title Insurance Company of Minnesota, for summary judgment. Both parties have filed memoranda in opposition to the opposing party's motion. The Court heard the oral arguments of counsel on both motions on July 29, 1985. For the reasons which follow, the motion of the plaintiff is denied and the motion of the defendant is granted.

Plaintiff filed this action against the defendant alleging breach of contract under a title guarantee insurance policy. Plaintiff avers that under that policy, "defendant agreed to insure plaintiff against any loss sustained by it by reason of any defects, liens or encumbrances in the title of the insured to [the real property in question]." Plaintiff avers that defendant failed to reference on the exception sheet to the title policy issued by the defendant an easement granted in favor of The East Ohio Gas Company for the purpose of maintaining a gas line over the property in question. Plaintiff claims that the easement "is a defect and encumbrance in plaintiff's title to the Property." Plaintiff avers that it

gave notice to the defendant of the existence of the defect and encumbrance in the title to the property, and made a demand upon the defendant for payment of damages which it sustained as a result thereof. Plaintiff avers that defendant failed to pay plaintiff for losses sustained as a result of the defendant's material breach of the contract in question, and that defendant's "breaches and failure to pay ... were done in bad faith, with malice and in reckless disregard with the terms of the insurance policy." Plaintiff seeks compensatory and punitive damages, plus interest, costs, and any other relief the Court deems proper.

Defendant has filed an answer in response to plaintiff's complaint, admitting that it issued the title guarantee in question and that it received a letter from plaintiff's counsel regarding the alleged existence of a high pressure East Ohio gas line. Defendant denies the remainder of plaintiff's allegations. The defendant further avers as follows:

(1) The Plaintiff's Complaint fails to state a claim upon which relief can be granted.

(2) Plaintiff has waived its claims against the Defendant.

(3) Plaintiff was negligent which negligence [sic] proximately caused or contributed to its alleged damage.

(4) Plaintiff assumed the risk of the damages alleged in its Complaint.

(5) Plaintiff is guilty of laches and is estopped from bringing the within action against the Defendant.

(6) Plaintiff's claims are barred by virtue of the applicable statute of limitations.

The Court addresses the defendant's motion before the plaintiff's motion, since the defendant's motion raises issues which precede a substantive analysis of plaintiff's breach of contract claim, the primary issue addressed in the plaintiff's motion.

Defendant seeks summary judgment on plaintiff's complaint on two grounds. First, defendant asserts that it is liable under the title guaranty policy in question only to the named party guaranteed. Defendant asserts that it originally guaranteed a general partnership, which it refers to as Fairway Development I, consisting of three partners: Thomas M. Bernabei, James V. Serra, Jr., and Howard J. Wenger. Defendant states that each of these three men contributed to the partnership's capital and shared in the partnership's profits and losses equally. Defendant argues that Fairway Development I commenced on October 15, 1979 and terminated on May 20, 1981, when two partners in Fairway Development I, Bernabei and Serra, sold and transferred their respective undivided one-third interests in the partnership to the remaining partner, Wenger, and a third-party purchaser, James E. Valentine. Defendant argues that a new partnership resulted from this sale, called Fairway Development II. Defendant concludes that it cannot be held liable to the plaintiff since it is not in privity with the plaintiff as the named party guaranteed. Defendant argues that the named party guaranteed was Fairway Development I, a partnership which dissolved in 1981 upon formation of Fairway Development II, and that its liability does not extend to Fairway Development II.

Stating the second basis for its motion, defendant argues that if the Court finds that the plaintiff is the party guaranteed under the contract, that plaintiff's failure to timely notify the defendant of a claim or defect bars it from recovering. Defendant further argues that if plaintiff is permitted to recover at all, its recovery should be limited to the face amount of the title guarantee, $382,900, and that plaintiff should be precluded from recovering punitive damages since plaintiff has not demonstrated that defendant acted with actual malice.

In response to defendant's argument that the plaintiff is not the party guaranteed under the title guaranty issued by the defendant, the plaintiff argues that under Ohio Rev.Code § 1775.26(A), the transfer of Bernabei and Serra of their partnership interests was not in itself sufficient to dissolve the partnership. Plaintiff states that

in the instant case, the facts are clear that there was an intent between the partners of what defendant calls Fairway Development I and II to continue the operation of the Fairway Development Company following the sale by Bernabei and Serra of their interests to Wenger and Valentine without dissolving the partnership. Plaintiff states that in deciding this case, the Court's focus should be upon the intent of the parties. Lastly, plaintiff argues that Fairway Development II has continued to carry on the stated purpose of Fairway Development I, which is really just an expansion of the purpose set forth in the partnership agreement for Fairway Development I, the acquisition and development of real estate.

As to the question of timely notice, plaintiff argues that it gave notice to the defendant and commenced suit within one year from the date it discovered the easement in question.

### Discussion and Law

It is a fundamental principle of law that any change in the personnel of a partnership will result in its dissolution. *See Commissioner v. Shapiro*, 125 F.2d 532, 535 (6th Cir.1942). The Court must thus determine whether the general rule has been modified by statute.

The resolution of this case is governed by the law of the forum state, Ohio. Ohio has adopted the Uniform Partnership Law, modeled after the Uniform Partnership Act enacted by the National Conference of Commissioners on Uniform State Laws in 1914. Ohio follows the common law aggregate theory of partnership, under which a partnership is regarded as the sum of the persons who comprise the partnership, versus the legal entity theory of partnership, under which the corporation, like a partnership, is regarded as an entity in itself. *See Battista v. Lebanon Trotting Assoc.*, 538 F.2d 111 (6th Cir.1976); *Smith v. Pinkerton*, 2 O.L.A. 618 (1st Dist.1924); *McMillen v. Industrial Commission*, 13 Ohio App. 310 (7th Dist.1920). *See also E.I. Du Pont De Nemours Powder Co. v. Jones Bros.*, 200 F. 638, 641 (S.D.Ohio 1912), *citing*

*Byers v. Schlupe*, 51 Ohio St. 300, 314, 38 N.E. 117 (1894); *Church Budget Envelope Co. v. Budget Press*, 2 Ohio Op.2d 158, 136 N.E.2d 101 (10th Dist.1955). Three sections of the Ohio Uniform Partnership Law are particularly applicable to this case, and are set forth in relevant part, as follows:

§ 1775.26 *Effect of conveyance of interest of a partner.*

(A) A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled.

(B) In case of a dissolution of the partnership, the assignee is entitled to receive his assignor's interest and may require an account from the date only of the last account agreed to by all the partners.

§ 1777.03 *New certificate on change in membership.*

On every change of the members of a partnership transacting business in this state under a fictitious name or under a designation that does not show the names of the persons interested as partners in the business, except in the case of ... a domestic or foreign limited partnership that is formed under or subject to Chapter 1782. of the Revised Code, a new certificate shall be filed for record with the county recorder as required by section 1777.02 of the Revised Code on the formation of such partnership; but ... [i]n the case of a domestic or foreign limited partnership, it is sufficient if an amendment to the certificate or application specified in section 1777.02 of the Revised Code

is filed only when there is a change in the name of one or more of the general partners of such a limited partnership.

§ 1775.28 *Dissolution distinguished from winding up of affairs.*

The dissolution of a partnership is the change in the relation of the partners caused by any partner's ceasing to be associated in the carrying on as distinguished from the winding up of the business.

■ There is a dearth of case law to assist the Court in applying these sections of the Ohio Uniform Partnership Law to the case at bar. The Court's review of the applicable statutory law supports a finding that the common law rule that "a dissolution occurs and a new partnership is formed whenever a partner retires or a new partner is admitted," *see Shunk v. Shunk Manufacturing Co.*, 86 Ohio App. 467, 476, 93 N.E.2d 321 (3rd Dist.1949), citing *Snyder Manufacturing Co. v Snyder*, 54 Ohio St. 86, 43 N.E. 325 (1896), survives the enactment of the Ohio Uniform Partnership Law.

Under Ohio Rev.Code § 1777.03, where members of a general partnership change, the partnership must file a new certificate of partnership, unlike a limited partnership, which simply may amend its certificate of partnership. The fact that the Uniform Partnership Law makes this distinction supports a finding that the authors of the Uniform Partnership Act recognized that a change of the members of a general partnership in fact changes the original partnership and creates a new partnership requiring a new certificate, as opposed to an amendment to the original certificate.

Likewise, Ohio Rev.Code § 1775.28 provides that any change in the relation of the partners will dissolve a partnership. Under Ohio Rev.Code §§ 1775.30, the bankruptcy, expulsion, or death of a partner causes the dissolution of a partnership. Also, under Ohio Rev.Code § 1775.31, a court may decree a dissolution of a partnership when a partner is declared a lunatic in a judicial proceeding, shown to be of unsound mind, or in any other way becomes incapable of performing his part of the partnership contract. Further, the terms of Uniform Partnership Act § 41(1), which is mirrored by Ohio Rev.Code § 1775.40(A), provide that:

When any new partner is admitted into an existing partnership, or when any partner retires and assigns ... his rights in partnership property to two or more of the partners, or to one or more of the partners, and one or more third persons, if the business is continued with liquidation of the partnership affairs, creditors of the first or dissolved partnership are also creditors of the partnership so continuing the business.

This section seems to assume that a dissolution occurs upon the admission of a new partner or the retirement of an old partner. The official comment to § 41(1) notes that: "It is universally admitted that any change in membership dissolves a partnership, and creates a new partnership. This section, as drafted, does not alter that rule."

These sections above discussed all support an application of the common law rule articulated in *Shunk*, and a finding that when Fairway Development II was formed, Fairway Development I dissolved, and a new partnership was formed. Defendant, however, argues that the language of Ohio Rev.Code § 1775.26(A) cannot be reconciled with this analysis.

The terms of Ohio Rev.Code § 1775.26 permit a partner to assign his interest to another and allow the assignee to receive the assigning partner's interest in the partnership upon dissolution, but limit the assignee from taking part in the management of partnership affairs. However, under Ohio Rev.Code § 1775.23, a partner's property rights consist of "his rights in specific partnership property, his interest in the partnership, and his right to participate in the management." A "partner's interest" is defined in Ohio Rev.Code § 1775.25 as "his share of the profits and surplus, and the same is personal property." A partner's interest is thus a subset of a partner's entire partnership rights.

Ohio Rev.Code § 1775.26 mirrors § 27 of the Uniform Partnership Act. The official comment to Section 27 of the Uniform Partnership Act points to early case law stating:

*These authorities on the whole state that the mere assignment dissolves the partnership. Many such assignments, however, are merely by way of collateral security for a loan, the assigning partner in no wise intending to end the partnership relation.* If he neglects his personal relation, the other partners may dissolve the partnership under section 31 of this act. But the mere fact of assignment without more should not be said in all cases to be an act of dissolution. The change in the existing law follows a similar change of the English law embodied in section 31 of the English Partnership Act.

[Emphasis added.]

 These sections indicate that the provision of Ohio Rev.Code § 1775.26 that a partner may convey his interest without dissolving the partnership enables a partner to transfer *some,* and not all, of his partnership rights without transferring management rights and without dissolving the partnership. *See In re Decker,* 295 F.Supp. 501 (Dist.Va.1969), *aff'd sub nom. B.B. Woodson v. Gilmer,* 420 F.2d 378 (4th Cir.1970), *cert. denied,* 399 U.S. 928, 90 S.Ct. 2244, 26 L.Ed.2d 795 (1970). Ohio Rev.Code § 1775.26 is thus not dispositive of the instant case where not one but two partners have transferred not just their interest in the partnership, i.e., their respective shares of profits and surplus, but their entire respective bundles of partnership rights. *See Agreement of Sale* (buyers agree to purchase "all right, title and interest" of the sellers). The Court's conclusion accords with the aggregate theory of partnership, which, applied to this case, recognizes Fairway Development I not as an entity in itself, but as a partnership made up of three members, Bernabei, Serra, and Wenger. That partnership ceased when the membership of the partnership changed.

Plaintiff's argument that Ohio Rev.Code § 1775.26 should be given a contrary interpretation and lead the Court to conclude that the partnership herein referred to as Fairway Development II was merely a continuation of the partnership herein referred to as Fairway Development I, and not a new and separate partnership, would require an interpretation of § 1777.03 in isolation from the rest of Ohio's Uniform Partnership Law. Such an interpretation is contrary to law. The provisions of the Uniform Partnership Act are to be construed as a whole. *See In re Decker, supra.*

The Court finds that the law as applicable to the facts of this case supports a finding that the named party guaranteed in the contract in question is not the plaintiff, and that the plaintiff is a new partnership which followed the termination of Fairway Development I. The fact that Fairway Development II filed an amended partnership certificate upon the transfer by Bernabei and Serra of their rights, title, and interest in Fairway Development I to Wenger and Valentine, instead of a new partnership certificate as required by law, is insignificant. Plaintiff concedes that when Fairway Development II was formed, a new partnership agreement was required under the terms of Ohio Rev.Code § 1777.03. Plaintiff states that the fact that it filed an amended partnership certificate, notwithstanding the fact that it is not in compliance with law, indicates its intent to continue the original Fairway Development partnership. However, in the section entitled "Recital" of the partnership agreement between Wenger and Valentine, the partners of Fairway Development Company recognize that they are forming and creating a new general partnership, versus continuing Fairway Development I. In Article 3 of the same agreement, under the section entitled "Term", Valentine and Wenger address the commencement of the partnership, and state that it "shall *commence* upon the execution of this Agreement (emphasis)." Further, the terms of the partnership agreement broadened and changed the terms of the original agreement. *See*

*e.g.*, Article 2, "Purpose of the Partnership", Article 8, "Management of Partnership Affairs", Article 9, "Restrictions on Transfers", and Article 10, "Default". Also, both partnership agreements provide that the partners are to own the partnership in equal shares, although an equal division of the partnership interests of Bernabei and Serra between Wenger and Valentine under the agreement of sale would have left Wenger owning a two-thirds interest in the partnership, and Valentine owning a one-third interest in the partnership.

Additionally the Court notes, as an aside, that Fairway Development II filed income tax returns for the years of 1981, 1982, and 1983 in the name of Fairway Development II.

■ The Court finds it unnecessary to address the defendant's argument as to lack of notice when, for the reasons above stated, the Court finds that the provisions of the Ohio Uniform Partnership Law, together with the facts of this case, indicate that when Serra and Bernabei transferred their interests to Wenger and Valentine, the partnership known as Fairway Development I dissolved, and the partnership known as Fairway Development II, consisting of members Valentine and Wenger, was formed. Fairway Development I, being a separate entity from Fairway Development II, the current plaintiff, the Court holds that the terms of the title guaranty extended only to the named party guaranteed, that party being Fairway Development I, and that Fairway Development II therefore has no standing to sue the defendant for breach of the contract in question. Defendant's motion for summary judgment is therefore granted.

The plaintiff has filed a motion for summary judgment on grounds that no genuine issues of material fact remain for trial as to the defendant's breach of contract of title insurance which it allegedly entered into with the plaintiff herein. The Court having reviewed the plaintiff's motion, and finding it to be subsumed within the Court's disposition of the defendant's mo-

tion for summary judgment, the plaintiff's motion for summary judgment is hereby denied.

IT IS SO ORDERED.